**John L. PREBIL and Margery C. Prebil, husband and wife, Plaintiffs,**

v.

**PINEHURST, INCORPORATED, a Corporation, Defendant.**

**No. CV 82–253–H–CCL.**

United States District Court, D. Montana, Helena Division.

July 24, 1986.

---

Ross W. Cannon, Helena, Mont., for plaintiffs.

Kenneth S. Frazier, Felt & Martin, Billings, Mont., for defendant.

## OPINION AND ORDER

LOVELL, District Judge.

The issue the court must decide in this case is, assuming there is no intent to defraud or deceive, whether it is necessary for a statement of material fact concerning a lot in a development to be untrue at the time of the sale of that lot, for a violation of 15 U.S.C. § 1703(a)(2)(B) to occur.

Plaintiffs John and Margery Prebil (Prebil), brought this suit against Defendant Pinehurst, Inc. (Pinehurst), under the Interstate Land Sales Full Disclosure Act (Act), 15 U.S.C. §§ 1701–1720, alleging a violation of 15 U.S.C. § 1703(a)(2)(B), in that Pinehurst made an untrue statement of materi-

al fact in the property report given to Prebil, and upon which Prebil relied. The case is before the court on the parties' cross motions for summary judgment. The court has jurisdiction pursuant to 15 U.S.C. §§ 1709(a) and 1719.

FACTUAL AND PROCEDURAL BACKGROUND

The following stipulation of facts has been adopted by the court in an order dated May 7, 1985:

1. Plaintiffs, John and Margery Prebil, are residents of the State of Montana, and reside at 620 North Warren, Helena, Montana.

2. Defendant, Pinehurst, Inc., is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at Pinehurst, North Carolina. Defendant is the developer of a subdivision located at Pinehurst, North Carolina.

3. On April 27, 1978, plaintiffs contracted to purchase two lots, namely Lot Nos. 587 and 588 of Unit 16 in Phase II, of defendant's development. The purchase price for each lot was $14,500.00.

4. At the time of the execution of the contracts, plaintiffs made a cash down payment of $1,450.00 per lot. Plaintiffs also executed one promissory note per lot in favor of the defendant, for the balance of the purchase price of each lot. Each note was for the unpaid balance of the price of the lot, or the sum of $13,050.00, with interest at 8% per annum. Pursuant to the terms of each promissory note, plaintiffs agreed to pay defendant the total sum of $18,999.60 in principal and interest. Interest was to commence on May 27, 1978 and payments were to commence on June 27, 1978. There were to be 120 regular monthly payments of $158.33 per month. Plaintiffs have made these payments since June 27, 1978.

5. At the time of the execution of the contracts, defendant furnished plaintiffs with a property report dated December 30, 1977, prepared pursuant to the requirements of the Interstate Land Sales Full Disclosure Act. Page 13, paragraph

10, subparagraph a, subparagraph 2, of the property report provided that roads in Unit 16 were scheduled to be completed by December 31, 1981.

6. The roads in Unit 16 were not completed by December 31, 1981, but were completed on or before September 3, 1982.

7. At no time did defendant advise plaintiffs that the roads to these lots would not be completed by December 31, 1981.

8. The roads to these lots were not completed by December 31, 1981, for the following reasons:

> During 1979 and 1980, the defendant was managed by a management group entitled Palmieri Co., Inc. During this same period of time, defendant was prohibited by the terms of prior lending agreements from borrowing money from any source other than from those lenders. In early 1980, Palmieri Co., Inc., was negotiating a restructuring of defendant's debt. In the spring of 1980, the contract of Palmieri Co., Inc., with defendants was terminated. The loss of continuity in restructuring the debt, plus the delay arising from a recognition that the lenders were extremely likely to take over the assets of defendant, caused a delay in generating the cash flow necessary to pay for the installation of the roads, and a consequent delay in the installation of the roads themselves.

9. Prior to December 31, 1981, plaintiffs attempted to sell their lots, and in fact entered into listing agreements with realtors in the Pinehurst, North Carolina area, but the lots did not sell.

The record in the case indicates that the following facts, although not stipulated to, are nonetheless not in dispute: (1) Prebil relied upon the assertions made in the property report in deciding to purchase the lots as a short term investment; (2) Pinehurst knew with certainty in May, 1981, that it would not complete the roads by December 31, 1981; and (3) there was no intent to defraud or deceive Prebil on Pinehurst's part.

Prebil filed this suit on November 24, 1982, seeking recision of the contracts, refund of amounts paid to Pinehurst and miscellaneous other damages.

DISCUSSION

*A) Untrue Statement of Material Fact.*

The facts in this case indicate that, except for the issue of whether there was an untrue statement of material fact, the elements of a violation of 15 U.S.C. § 1703(a)(2)(B) are established. 15 U.S.C. § 1703(a)(2)(B) provides:

> (a) It shall be unlawful for any developer or agent, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce, or of the mails—
>
> .    .    .    .    .
>
> (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under section 1702(a) of this title—
>
> .    .    .    .    .
>
> (B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision.

15 U.S.C. § 1709(a) provides:

> A purchaser or lessee may bring an action at law or in equity against a developer or agent if the sale or lease was made in violation of section 1703(a) of this title.

Pinehurst is a developer. Pinehurst communicated in interstate commerce with Prebil with respect to the sale of the lots. Pinehurst obtained money from Prebil. The question remaining is whether Pinehurst did so through the use of an untrue statement of material fact.

Pinehurst informed Prebil, through the property report required under 15 U.S.C. § 1703(a)(1)(B), that access roads would be

completed by December 31, 1981. The roads were not completed until September 3, 1982, over eight months later. Pinehurst contends that this does not constitute an untrue statement, first, because it was merely an estimate of when the road would be completed, and secondly, because of a statement in the property report that indicates that Pinehurst's parent company "experienced an operating loss during the last fiscal year [1976]." Therefore, argues Pinehurst, Prebil was put on "notice" of Pinehurst's unstable financial situation, and knew the roads might not be completed.

Nothing in the property report indicates that the date was merely an estimate. The report affirmatively states that the roads "are scheduled to be completed by ... December 31, 1981. ... All completion dates shall prevail unless prevented by an Act of God, labor dispute or other similar cause. Bonds have been posted to insure completion." The nonoccurrence of that which is affirmatively stated to occur makes the affirmative statement untrue.

■ The court need not decide whether the "notice" Prebil received precludes the time overrun from making the statement untrue. Pinehurst's contention really is that it would not have been reasonable for Prebil to rely on the affirmative statement that the roads would be done, because of the "notice." While it is highly questionable that a party must prove reliance under the Act[1], reliance in this case would be reasonable, because of the assertion that "[b]onds have been posted to insure completion." The statement in the property report that the roads would be completed by December 31, 1981, was untrue.

■ The question which arises is when the statement became untrue. Clearly, as of January 1, 1982, the statement was untrue. Even though Pinehurst admits that it knew in May, 1981, the roads would not be completed, it is feasible that some contingency could have occurred which would have provided for the completion of the roads by December 31, 1981. That is, until the actual deadline passed, the statement could not be untrue. Therefore, the statement became untrue as of January 1, 1982.

■ The next question is whether this untrue statement was one of material fact. The test of materiality is "whether a reasonable investor might have considered the omitted fact or erroneous statement as important in making a decision." *Paquin v. Four Seasons of Tennessee, Inc.*, 519 F.2d 1105, 1109 (5th Cir.1975). *See Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153–54, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972). Clearly, if an investor is looking to hold real property for a short period of time and then resell it, the date upon which access roads will be completed will be an important factor in making the decision to buy, for this affects not only the value of the property but its salability as well. The cases are in accord.

In *Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48 (N.D.Miss.1980), the court concluded that the misstatements made were ones of material facts. These included the assertion that all streets were graveled, when they were not, and the assertion that all lots were legally accessible by private roads, when they were not. 495 F.Supp. at 51, 54.

Therefore, the untrue statement was one of material fact.

*B) Solomon.*

Pinehurst argues that the case of *Solomon v. Pendaries Properties, Inc.*, 623 F.2d 602 (10th Cir.1980), acts to shield it from liability. In that case the issue was "whether mere subsequent nonperformance of promises is sufficient to support a cause of action under the Land Sales Act." 623 F.2d at 604. The cause of action centered upon the developer's failure to construct all the amenities, including streets, it

---

1. The courts are split as to whether, in addition to the untrue statement of material fact having been made, the plaintiff must have relied upon the untrue statement. Against reliance: *Hester v. Hidden Valley Lakes, Inc.*, 495 F.Supp. 48, 53 (N.D.Miss.1980); *Bryan v. Amrep Corp.*, 429 F.Supp. 313, 317 (S.D.N.Y.1977); *Husted v. Amrep Corp.*, 429 F.Supp. 298, 310–11 (S.D.N.Y. 1977). For reliance: *Gilbert v. Woods Marketing, Inc.*, 454 F.Supp. 745, 749 (D.Minn.1978).

represented it would construct. The failure was the result of the developer's financial problems. 623 F.2d at 604. The court held for the developer, stating, "We hold this section did not confer a cause of action for representations of future occurrences that the developer in good faith intended, *at the time of sale,* to carry out." 623 F.2d at 604 (emphasis in original).

The court reasoned that this holding served the legislative intent. In 1979, Congress amended the Act by adding section 1703(a)(2)(D). This provides that it is unlawful for a developer "to represent that roads ... will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed." *See* Pub.L. No. 96–153, § 403, 93 Stat. 1101, 1127 (1979). The legislative history indicates that Congress

> intended to assure that when developers or their sales agents make seductive promises through oral or written representations or advertisements to induce individuals to buy land, the individuals have a contractual basis for assuring the services or amenities are completed within a reasonable time. It provides a statutory basis for suit if the contract fails to reflect the representations were made.

H.R.Rep. No. 96–154, 96th Cong., 1st Sess. 36, *reprinted in* 1979 U.S.Code Cong. & Admin.News 2317, 2351–52. In short, the court determined that the case was not of a type which section 1703(a)(2)(B) was intended to address.

This court need not, however, make such a broad determination, for the holding in *Solomon* can be explained within the framework of section 1703(a)(2)(B). In reaching its decision that section 1703(a)(2)(C) does not require a showing of scienter, the court in *Ackmann v. Merchants Mortgage and Trust Corp.,* 645 P.2d 7 (Colo.1982), discussed *Solomon.* The court stated that although it appears that *Solomon* suggests that section 1703(a)(2)(B) requires the plaintiff to show fraudulent intent, the language indicating this is dicta. "It appears, therefore, that

the actual basis of the *Solomon* decision was that there was no misrepresentation of material fact or omission of material fact at the time of sale and that, for this reason, liability could not be imposed on the defendant." Id. at 18 n. 7.

In *Bryan v. Amrep Corp.,* 429 F.Supp. 313 (S.D.N.Y.1977), the court held that under the predecessor to section 1703(a) it was necessary for the plaintiff to prove "only that a material misrepresentation or omission existed in the statement of record at the time the property was sold." Id. at 317. This language supports the *Ackmann* court's comments on *Solomon,* in that it requires that in order for a misstatement (or untrue statement) of material fact to amount to a violation of section 1703(a)(2)(B), the misstatement must exist at the time the property is sold. The statement concerning the roads in the present case did not become untrue until January 1, 1982, when the roads were not done. At the time Prebil bought the lots, the statement was not untrue. *See Hester,* 495 F.Supp. at 51, 54 (the misstatements concerning the roads were of conditions which the developer asserted existed *at the time of sale* ).

*C) Conclusion.*

█ The present case falls squarely within *Solomon.* The court in *Ackmann,* however, puts that decision within a framework of doctrine which has been employed before, namely, that the untrue statement of material fact must exist at the time of sale to give rise to a violation under the Act. The case law indicates the critical time is that of sale, or in this case, the date of the signing of the contracts, April 27, 1978. The statement was not untrue at that time. Accordingly,

IT IS HEREBY ORDERED that Pinehurst's motion for summary judgment is GRANTED.