**Charles W. GIBBES and Sandy S. Termotto, Plaintiffs,**

v.

**ROSE HILL PLANTATION DEVELOPMENT COMPANY, a Limited Partnership; Burke, Fox & Company; Kevin G. Fox, Individually; Richard Burke, Individually, James Pervier, Joseph Rosenbloom, Eugene Lehman; David Walsh, Rod Brady, and Thomas Galbraith, Defendants.**

No. 2:89–0866–18.

United States District Court, D. South Carolina, Charleston Division.

May 21, 1992.

Brian P. Gibbes, George E. Mullen, Hilton Head Island, S.C., for plaintiffs.

Drew A. Laughlin, Douglas W. MacNeille, Hilton Head Island, S.C., for defendants.

## ORDER

NORTON, District Judge.

This matter is before the court for consideration of plaintiffs' objections to the United States magistrate judge's recommendation that defendants' motion for summary judgment be granted and that sanctions be imposed on plaintiffs' attorney pursuant to Fed.R.Civ.P. 11. This record includes a report and recommendation of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1)(B).

### I. *Background*

Rose Hill Plantation is a housing development in Beaufort County, South Carolina. Property owners have access to certain recreational facilities, including docks, pools, tennis courts and stables. These recreational amenities, specifically the stables, are the subject of this suit.

The plaintiffs, citizens of Beaufort County, South Carolina, own property in Rose Hill Plantation.[1] Plaintiff Termotto purchased his lot directly from Rose Hill Plantation Development Company ("Rose Hill") on June 15, 1982. Affidavit of Richard H. Burke, at # 12. Plaintiff Gibbes purchased his lot in Rose Hill Plantation from Raymond and Mary Bizzari on August 19, 1988. Affidavit of Richard H. Burke, at # 10.

Termotto is an avid polo player. He asserts that he purchased a lot in Rose Hill Plantation because Rose Hill intended to build a regulation polo field.[2] Gibbes asserts that he purchased his lot because of his interest in the stables.

In 1989, Rose Hill offered to transfer an "Equestrian Center" to the Rose Hill Property Owners Association ("the Association"). This "Equestrian Center" included 17.24 acres of land and the stables. In February 1989, the officers of the Association solicited a proxy from the property owners regarding the "Equestrian Center" and recommended that the property owners vote in favor of accepting the "Equestrian Center."[3] At the March 15, 1989 meeting

---

1. Plaintiffs Robert R. and Beverly J. Remenap, Robert H. and Virginia Albertin, J. Stephen and Rose Hunter and Jay Delozier have withdrawn from this case.

2. Plaintiffs' attorney asserts that Rose Hill "got [Termotto] to buy property [at the Plantation] so [Rose Hill] could use him and his reputation to sell the polo program." Hearing before the Magistrate Judge on July 25, 1990, at 17, lines 22–24.

3. The proxy stated that the "Equestrian Center" consisted of approximately twelve acres of land. This was incorrect. The "Equestrian Center" consisted of 17.24 acres of land.

of the Association, the officers reported that the property owners voted, 204 to 111, with five abstentions, to accept the transfer of the "Equestrian Center." On June 30, 1989, Rose Hill deeded the 17.24 acre "Equestrian Center" to the Association.[4]

## II. *Procedural Background*

In April 1989, plaintiffs filed this suit, alleging that the 17.24 acre "Equestrian Center" was inadequate because it did not include a regulation polo field, which Rose Hill had allegedly promised.[5] Plaintiffs have sued Rose Hill, a limited partnership, as the developer that built Rose Hill Plantation; Burke, Fox & Company, a real estate sales and development partnership hired by Rose Hill in 1986; the principals in Burke, Fox & Company, Richard Burke and Kevin G. Fox; the officers or former officers of the Association, James Pervier, Joseph Rosenbloom, Eugene Lehman, David Walsh, Rob Brady and Thomas Galbraith ("the officers").[6]

In their first cause of action, plaintiffs allege that defendants Rose Hill, Burke, Fox & Company, and Burke and Fox individually have violated the Interstate Land Sales Act, ("ILSA"), 15 U.S.C. § 1703(a).[7] In their second cause of action, plaintiffs allege breach of covenants by all defendants. Plaintiffs request that this court require specific performance by defendants of certain alleged promises. Additionally, plaintiffs ask the court to require the transfer of recreational amenities to the Association, to void the Association referendum concerning acceptance of the amenities, to enjoin defendants from taking action contrary to plaintiffs' rights and to award attorneys fees and costs of this action. Plaintiffs also request that this court award "such other relief as the Court deems just and proper."

Plaintiffs filed motions for summary judgment and preliminary injunction. Defendants moved to dismiss on the pleadings or for summary judgment, and for Rule 11 sanctions. The court assigned this case to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) for consideration of these motions. The magistrate judge recommended that defendants' motion for summary judgment be granted and that sanc-

---

**4.** Rose Hill offered adjacent land totaling 28.95 acres to the Association, to be deeded to the Association in two phases, one of 22.2 acres and the other 6.75 acres. The first phase of 22.2 acres was offered by deed on June 30, 1989, but the Association had not accepted it as of May 1990. This 22.2 acres included the polo field. The land offered by Rose Hill to the Association in conjunction with the "Equestrian Center" totals 46.19 acres.

**5.** Plaintiffs' main complaint is that Rose Hill intends to build a road that will cut off the end of the polo field so that the field would no longer qualify as a United States Polo Association Regulation Field. Hearing before the Magistrate Judge on July 25, 1990, at 27, lines 6–25. Plaintiffs also initially complained about the condition of the stables. At this court's hearing on the magistrate judge's report and recommendation, plaintiffs also asserted that Rose Hill did not transfer certain floating docks to the Association, contrary to the provisions of the property reports.

**6.** Former plaintiffs, the Remenaps and the Hunters, purchased their property from Welton Corporation. The magistrate judge, in his report and recommendation, found that Welton Corporation was separate from Rose Hill. Plaintiffs Gibbes and Termotto objected to this finding. Plaintiffs' objections to the magistrate judge's report and recommendation, at #27.

However, the plaintiffs never sued Welton Corporation and never moved to add Welton Corporation as a defendant. Therefore, that entity is not a party to this action.

**7.** The magistrate judge found that defendants Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith did not participate in the sale of land and recommended that this court dismiss the ILSA cause of action against these defendants. Plaintiffs contend that the magistrate judge erred in making this recommendation because these defendants played a role in the alleged ILSA violations. Plaintiffs' objections to the magistrate judge's report and recommendation, at #29.

Plaintiffs, in their vague amended complaint, do not implicate defendants Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith in their first cause of action. Although pleadings should be liberally construed, parties should clearly indicate which defendants are implicated in a cause of action. Despite plaintiffs' later arguments, this court declines to read plaintiffs' complaint so broadly as to include these defendants. Further, if plaintiffs had implicated these defendants in the ILSA cause of action, Fed.R.Civ.P. 11 sanctions would be appropriate, since an ILSA action would not be sustainable against these defendants. *See infra* § III(A) on ILSA and parties.

tions pursuant to Fed.R.Civ.P. 11 be imposed on plaintiffs' attorney. Plaintiffs Charles W. Gibbes and Sandy S. Termotto, represented by Brian Gibbes, vehemently objected to every recommendation of the magistrate judge in a rambling sixty-five point document. At this court's hearing on the magistrate judge's report and recommendation, plaintiff Termotto was represented by separate counsel, George Mullen. At oral argument, Mullen objected that the magistrate judge erred in finding that Termotto did not have a cause of action under ILSA and erred in finding that the officers exercised good faith judgment.[8]

### III. *Standard of Review*

This court is charged with conducting a *de novo* review of any portion of the magistrate judge's report to which a specific objection is registered, and may accept, reject, or modify, in whole or in part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1)(C). Because plaintiffs repeatedly objected to each and every recommendation of the magistrate judge, this court will conduct a *de novo* review of the motions for summary judgment in their entirety.

Defendants have moved to dismiss the plaintiffs' complaint for failure to state a claim, pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment, pursuant to Fed. R.Civ.P. 56. If "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment...." Fed. R.Civ.P. 12(b).

These motions shall be treated as motions for summary judgment because this court is considering matters outside the pleadings. To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the nonmoving party. *Perini Corp. v. Perini Constr., Inc.,* 915 F.2d 121, 123–24 (4th Cir.1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Where states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet v. Kentucky Central Life Ins. Co.,* 950 F.2d 931 (4th Cir.1991). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson,* 477 U.S. at 247–248, 106 S.Ct. at 2510 (emphasis in original). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

### IV. *Interstate Land Sales Act*

In the instant case, plaintiffs assert that defendants Rose Hill, Burke, Fox & Company, and Burke and Fox individually promised, verbally and through a property report, to transfer a fifty-two acre "Equestrian Center," which would include a regulation polo field, to the Association. Plaintiffs argue that defendants violated the Interstate Land Sales Act ("ILSA"), 15 U.S.C. § 1701 *et seq.* by refusing to implement these alleged promises.

■ The purpose of ILSA is to ensure that a buyer, prior to purchase, is informed of facts which would enable a reasonably prudent individual to make an informed decision about purchasing the property. *Paquin v. Four Seasons of Tennessee, Inc.,* 519 F.2d 1105, 1109 (5th Cir.1975), *cert. denied,* 425 U.S. 972, 96 S.Ct. 2168, 48

---

**8.** It appears that plaintiff Termotto retained separate counsel at some point after the objections to the magistrate judge's report and recommendation were filed.

L.Ed.2d 795. 15 U.S.C. § 1709(a) provides a private cause of action for violations of 15 U.S.C. § 1703(a). In order to ·prove an ILSA claim, plaintiffs must first show that they qualify for ILSA protection. Second, plaintiffs must show that defendants made an untrue statement or omitted a material fact from their property report in violation of § 1703(a)(1) or in its dealings with purchasers in violation of § 1703(a)(2).

### A. Parties

■ In order to qualify for ILSA protection, a plaintiff must show that he purchased a lot from a defendant who qualifies as a developer or developer's agent under ILSA. ILSA defines a developer as any person who, directly or indirectly, sells, or offers to sell, or advertises for sale any lots in a subdivision and defines an agent as a person who represents, or acts for or on behalf of a developer in selling, or offering to sell, any lot or lots in a subdivision. § 1701(5) and (6).[9]

■ ILSA applies only to developers and their agents, unlike the Federal Securities Acts which apply to "any person." *Bartholomew v. Northampton Nat'l Bank of Easton, Pennsylvania,* 584 F.2d 1288, 1293–1294 (3rd Cir.1978).[10] The Fourth Circuit has held that ILSA may be extended to controlling stockholders, officers and directors of development companies, although ILSA does not have a controlling persons clause. *Kemp v. Peterson,* 940 F.2d 110, 113 (4th Cir.1991).[11] However, ILSA causes of action are still limited to defendants who are involved in the sales process. *See Hammar v. Cost Control Marketing and Sales Management, Inc.,* 757 F.Supp. 698, 706 (W.D.Va.1990).[12] Thus, the determining factor is whether each defendant participated in sales or could be considered as a controlling person in an organization that participated in sales.

In the instant case, it is undisputed that Rose Hill is a developer as defined by ILSA. Burke, Fox & Company may be considered an agent of Rose Hill. Burke and Fox individually may be considered as corporate insiders of the agent of the developer.

■ ILSA defines a purchaser as an actual or prospective purchaser or lessee of any lot in a subdivision. § 1701(10). Plaintiff Gibbes did not purchase directly from Rose Hill nor from any of the other individual defendants. Gibbes purchased his lot from private individuals who are not parties to this suit. Plaintiff does not allege that these individuals are agents of Rose Hill. Private causes of action under ILSA

---

**9.** For the purposes of ILSA, an indirect seller is one who conducts selling efforts through means other than direct, face-to-face contact with buyers. *Bartholomew v. Northampton Nat'l Bank of Easton, Pennsylvania,* 584 F.2d 1288, 1293 (3rd Cir.1978). "There is no indication in the language of the statute or in the legislative history of the Act that an indirect seller is other than one who is involved in some manner in the selling efforts related to a land development project." *Id.*

**10.** In *Bartholomew,* plaintiffs sued the banks and the sole shareholder of the corporate limited partner of the land developer, alleging that these defendants were indirect sellers under ILSA and were aiders and abettors of the primary wrongdoers. *Bartholomew,* 584 F.2d at 1292–1293. Plaintiffs alleged that defendants knowingly participated in the fraudulent scheme, were engaged in the planning of the project, and financially profited from their participation. *Id.* The court found that these parties were not developers or agents, were not indirect sellers, and did not, by silence or inaction, aid or abet the development of land. *Id.* at 1293–1294. The court agreed with the district court in distinguishing a cause of action against "classic insiders" of the corporate developer. *Id.* at 1293, distinguishing *McCown v. Heidler,* 527 F.2d 204 (10th Cir.1975) (ILSA can be extended to insiders such as "fraudulent planners and profit makers").

**11.** The Fourth Circuit adopted *McCown,* 527 F.2d at 204, reasoning that "[t]o hold otherwise would defeat the purpose of the Act, since it is the officers of the corporation who are behind the alleged fraud." *Kemp,* 940 F.2d at 113.

**12.** In *Hammar,* the court permitted plaintiffs to show that one of the defendants, MDC, was a participating planner or aider and abettor, which is similar to the test set forth in *McCown.* However, in *Hammar,* the court had already determined that MDC was completely owned by a developer under ILSA. Thus, it appears that courts should first apply the *Bartholomew* sales test and then apply the *McCown* test in determining whether a defendant is subject to ILSA.

are limited to persons who directly purchase their property from a developer or a developer's agent. *Konopisos v. Phillips,* 30 N.C.App. 209, 226 S.E.2d 522, 524 (1976).[13] Therefore, Gibbes has no cause of action under ILSA against these defendants.

Plaintiff Termotto purchased his lot directly from Rose Hill on June 15, 1982. Termotto does have an ILSA cause of action against the developer, Rose Hill. Termotto does not dispute that Burke, Fox & Company began their association with Rose Hill in 1986, four years after he purchased his lot. Therefore, Termotto does not have a cause of action against Burke, Fox & Company and Burke and Fox individually, since those defendants were involved in neither the alleged oral representations nor the property reports issued in 1982.[14]

### B. The Property Report: 15 U.S.C. § 1703(a)(1)

It is unlawful for a developer or agent to state an untrue fact or omit a material fact in a property report. § 1703(a)(1)(C).[15] In order to prevail on an ILSA claim, a plaintiff does not need to prove that a defendant intended to defraud or deceive or that the plaintiff relied on the property report. *Husted v. Amrep Corp.,* 429 F.Supp. 298, 310 (S.D.N.Y.1977). Plaintiff needs only to show that the omission or misrepresentation existed in the report at the time the property was sold. *Bryan v. Amrep Corp.,* 429 F.Supp. 313, 317 (S.D.N.Y.1977).

If the property report's statement was untrue, the court must then determine whether the untrue statement was one of material fact. The test of materiality is "whether a reasonable investor might have considered the omitted fact or erroneous statement as important in making a decision." *Prebil v. Pinehurst, Inc.,* 638 F.Supp. 1314, 1317 (D.Mont.1986).[16]

To determine whether the property reports at issue in this case contained untrue or omitted material facts, this court must first determine which property reports are at issue. Termotto purchased his lot on June 15, 1982. The property reports issued by Rose Hill after that date are not relevant to Termotto's ILSA cause of action. Technically, Termotto could have received either the January 29, 1982 or the June 3, 1982 property report. Termotto asserts that Rose Hill gave him the June 3, 1982 property report and the court will assume for the purposes of this motion that this assertion is true. The June 3, 1982 property report provided for transfer of all recreational facilities to the Association upon the sale of all lots in the subdivision or by December 31, 1996. However, Termotto asserts that he understood that the transfer date would be June 30, 1989, which is the date provided in the January 29, 1982

---

**13.** While it is true that *Konopisos* is the only decision of record on this narrow issue, the reasoning of the *Konopisos* court is persuasive as to that issue. As the court stated in *Konopisos,* 226 S.E.2d at 524, "[h]ad Congress ... intended to extend 'purchasers' to include assignees it would have so done." There is no indication that Congress intended to extend this private cause of action to third parties who did not purchase property from a developer or agent. This finding conforms to the general rule that ILSA is more narrowly construed than the Federal Securities Acts and that courts should not fabricate a cause of action where Congress did not intend to create one. *Bartholomew,* 584 F.2d at 1294.

**14.** Since Burke, Fox & Company began its association with Rose Hill four years after Termotto bought his property and cannot have been involved with property reports or oral representations at the time of Termotto's purchase, this

court finds it unnecessary to determine whether these defendants actually qualify as agents of the developer pursuant to ILSA.

**15.** Section 1703(a)(1)(B) requires that developers provide purchasers with a property report that meets the requirements of § 1707 prior to the signing of any contract or agreement.

**16.** In *Prebil,* 638 F.Supp. at 1317, the court found that "[i]f an investor is looking to hold real property for a short period of time and then resell it, the date upon which access roads will be completed will be an important factor in making the decision to buy, for this affects not only the value of the property but its salability as well." In *Hester v. Hidden Valley Lakes, Inc.,* 495 F.Supp. 48, 51 (N.D.Miss.1980), the court concluded that the statements that all streets were graveled and that all lots were legally accessible by private roads were untrue and material.

property report for the transfer of recreational facilities from Rose Hill to the Association. Plaintiffs' amended complaint refers to the June 30, 1989 transfer date. Taking the facts in the light most favorable to Termotto, this court assumes, for the purpose of this motion, that Termotto received both reports and that Rose Hill could be bound by either property report. Therefore, Rose Hill could be required to transfer recreational amenities at least by June 30, 1989 as provided in the January 29, 1982 property report.

█ Having determined that both the January 29, 1982 and the June 3, 1982 property reports are at issue, this court must determine which sections of these property reports are applicable in the instant case. Plaintiff asserts that the property reports contain three promises defendants have not fulfilled: (1) a promise to transfer stables to the Association; (2) a promise to transfer docks to the Association; and (3) a promise to maintain the stables in good condition.

Both reports list stables as a recreational facility and explain that individual owners will be charged a special boarding fee for use of those stables. Neither property report defines stables. On June 30, 1989, Rose Hill deeded 17.24 acres and stables referred to as the "Equestrian Center" to the Association. Termotto insists that Rose Hill promised to transfer a fifty-two acre "Equestrian Center" to the Association.[17] However, the property reports do not mention an "Equestrian Center," nor does it specify the size of the stables. Rather, the property reports merely provide that such amenities will be transferred to the Association. Since Rose Hill has

transferred the stables to the Association, this conveyance satisfies the promise in the property report that such amenities would be transferred by June 30, 1989.[18]

The January 29, 1982 property report listed docks as an amenity to be transferred by June 30, 1989.[19] The June 3, 1982 property report also listed docks as an amenity to be transferred by December 31, 1996. Neither report defines docks. On June 30, 1989, Rose Hill deeded to the Association docks at Colleton Creek and docks "[o]ff Martingale East." At the hearing on these motions, plaintiff referred to Rose Hill's alleged promise of floating docks.[20] However, the property reports do not define docks, but rather only state that docks would be transferred to the Association. The June 30, 1989 conveyance of the Colleton Creek and Martingale East docks satisfies the promise to convey such amenities to the Association. Therefore, regarding the conveyance of the stables and docks, Rose Hill's 1982 property reports neither contain an untrue fact nor omit a material fact.

In the 1982 property reports, Rose Hill promised to "be responsible for the maintenance and operation of these facilities until transferred to the ... Association." Defendants assert that the facilities were inspected by independent third parties and that Rose Hill has corrected all deficiencies pursuant to an agreement with the Association. Termotto, in his amended complaint, asserted that the "Equestrian Center" was in disrepair when it was transferred to the Association. However, Termotto later stated under oath that he did not have any complaints about the condition of the facilities. Termotto deposition at 64–65.[21]

---

**17.** Termotto's basis for believing that Rose Hill promised a fifty-two acre "Equestrian Center" appears to originate from a preliminary approval from the Beaufort County Joint Planning Commission for an "equestrian center of approximately 50 acres." *See infra* note 24.

**18.** This transfer also satisfies the June 3, 1982 property report, since the actual transfer date occurred before December 31, 1996.

**19.** The report stated that Rose Hill had "formulated tentative plans to build dock facilities on the property ... [Rose Hill] has not obtained

the required approvals from regulatory authorities and cannot assure the size and capacity of the facilities when built."

**20.** The July 1, 1983 property report refers to a floating dock facility. Since that property report was issued after Termotto purchased his lot, that report is not relevant to his cause of action.

**21.** In response to the question "[d]o you have any complaints about the condition of those premises as they're described?," Termotto stated,

There is no genuine issue of material fact as to the condition of the facilities since there is no dispute that the stables have been repaired. Therefore, Termotto's ILSA cause of action based on these allegations must fail.

### C. Oral Misrepresentations:
### 15 U.S.C. § 1703(a)(2)

15 U.S.C. § 1703(a)(2) provides that it is unlawful for developers

(A) to employ any device, scheme, or artifice to defraud;

(B) to obtain money or property by means of any untrue statement of material fact, or any omission to state a material fact necessary in order to make the statements made (in light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser; or

(D) to represent that roads, sewers, water, gas, or electric service, or recreational amenities will be provided or completed by the developer without stipulating in the contract of sale or lease that such services or amenities will be provided or completed.

▪ Plaintiff need not show reliance on defendant's statements in order to prove a violation of § 1703(a)(2)(A) or (C). Under § 1703(a)(2)(B), plaintiff need not show reliance to maintain a cause of action based on an omission, but may be required to show reliance to maintain a cause of action for an affirmative misrepresentation. *Prebil,* 638 F.Supp. at 1317.[22] ("promotional statements or material will be judged on the basis of the affirmative representations contained therein and the reasonable inferences to be drawn therefrom...." 24 C.F.R. § 1715.25).

▪ Termotto contends that Rose Hill or its agents represented to him, prior to purchase, the size of the "Equestrian Center."[23] Since it is undisputed that Termotto is a polo player, it is plausible that he relied on alleged representations in purchasing a lot at Rose Hill. However, Termotto must show that such misstatements occurred before or at the time he purchased his lot. Any indications of the size of the "Equestrian Center" published or stated after June 1982 are irrelevant to his cause of action under ILSA.[24] Viewing the

---

"I don't think I have any complaints about it, because I know there was a committee that got together and looked at the barn and had certain repairs done to the barn and all."

22. According to the *Prebil* court, it is highly questionable that a party must prove reliance under ILSA and courts are split as to this issue. *Prebil,* 638 F.Supp. at 1317, n. 1 (against reliance: *Hester,* 495 F.Supp. at 53; *Bryan,* 429 F.Supp. at 317; *Husted,* 429 F.Supp. at 310–311; for reliance: *Gilbert v. Woods Marketing, Inc.,* 454 F.Supp. 745, 749 (D.Minn.1978)). However, the *Bryan* court stated that reliance is an element of a § 1703(a)(2)(B) claim based on misrepresentation. *Id.* at 319. Then the court stated that reliance is not required for violations of § 1703(a)(2)(A) & (C) based on an omission. *Id.* at 320.

Based on these cases, this court adopts the reasoning of the *Bryan* court, which found that reliance may be required to show a violation only of § 1703(a)(2)(B). If reliance were not a required element, plaintiffs could recover even if they were not in fact injured by the defendants' representations. *Rubenstein v. Rossmoore Construction Corp. of Maryland,* No. Y–76–1033, slip op. (D.Md. Mar. 6, 1978) (In denying motion to certify a class, the court noted that reliance may be a required element under § 1703(a)(2)(B) and defendants should at least be able to prove non-reliance as a defense).

23. The magistrate judge found that "Termotto by affidavit asserts that agents of the defendant promised such a center, but in his deposition he admits that no boundaries, or size were promised to him and he has no idea where he got the idea that the equestrian center was to be fifty-two (52) acres." Magistrate judge's report and recommendation, at 4. Termotto's statements are in conflict. Taking the facts in the light most favorable to the nonmoving party, this conflict may present a question of fact.

24. As previously stated, Termotto's basis for believing that Rose Hill promised a fifty-two acre "Equestrian Center" appears to originate from a preliminary approval from the Beaufort County Joint Planning Commission for an "equestrian center of approximately 50 acres." It is undisputed that Rose Hill received this approval in 1984. Termotto purchased his lot in 1982. Therefore, Termotto cannot claim that he relied, when he bought his lot in 1982, on an oral

facts in the light most favorable to the plaintiff, there is a question of fact whether Rose Hill or its agents orally misrepresented the size of the "Equestrian Center" to Termotto at the time he purchased his lot.[25]

## V. *Breach of Covenant*

Plaintiffs essentially make two claims of breach of a covenant. First, plaintiffs allege that Rose Hill and Burke, Fox & Company[26] breached a duty to transfer all recreational amenities to the Association free and clear of all liens, in good repair and free of defects. Second, plaintiffs assert that defendants Pervier, Rosenbloom, Lehman, Walsh, Brady, and Galbraith, through a proxy sent to Association members, unlawfully attempted to reduce the size of the "Equestrian Center."[27]

### A. Rose Hill and Burke, Fox & Company

██ Plaintiffs assert that defendants have breached a covenant and contract.[28] In their amended complaint, plaintiffs allege that defendants Rose Hill and Burke, Fox & Company

had and have a duty to transfer and convey said recreational facilities and amenities free and clear of all liens, in good repair and free of defects ... Defendants [sic] Rose Hill Plantation Development Company have [sic] breached this duty to convey by: (a) Attempting to convey fewer amenities and recreational facilities than Defendants were bound to convey under the Covenants and By-Laws. (b) Attempting to convey said recreational facilities and amenities in a defective and poorly maintained condition.

Since plaintiffs seek to assert a breach of contract, plaintiffs must produce evidence of a contract. However, plaintiffs have not produced evidence of any contract with defendants that requires the conveyance of a fifty-two acre "Equestrian Center" to the Association.[29] Instead, plaintiffs refer to

representation based on a preliminary approval that was not granted until 1984.

**25.** Plaintiffs have requested that this court order specific performance of defendants' representations in their property reports. This court determined that the promises in the 1982 property reports have been fulfilled. Therefore, plaintiff Termotto has essentially already received "specific performance" of the property reports. Accordingly, should Termotto prevail on his cause of action pursuant to § 1703(a)(2)(B), he could be entitled to either damages, specific performance or other relief. This court would then consider the contract price of the lot, the amount Termotto actually paid, the cost of improvements to the lot, the fair market value of the lot, or the fair market value of the lot at the time such lot was purchased. § 1709(a).

**26.** Plaintiffs do not specifically refer to Burke and Fox individually in this cause of action.

**27.** Plaintiffs apparently refer to the statement sent to property owners soliciting their vote in support of accepting the original "Equestrian Center consist[ing] of a barn with 40 stalls, a wash stall, feed room, tack room, office and small residential apartment and ... sited on approximately twelve (12) acres of land." Plaintiffs assert that this proxy statement would allow Rose Hill to deed less than fifty-two acres and did not include material information concerning the state of repair of the center and included erroneous information concerning the use of the center by property owners.

**28.** Plaintiffs, in their motion for summary judgment and permanent injunction, argue that defendants have violated the Development Standards Ordinance for Beaufort County. Although pleadings should be liberally construed, the amended complaint simply does not raise this issue. If plaintiffs had intended to allege a violation of this ordinance, they should have amended their complaint to that effect. This issue is not properly before this court, and therefore this court will not address any alleged violation of the Development Standards Ordinance for Beaufort County.

In their reply to defendants' motion for summary judgment and sanctions, plaintiffs state that "[i]f this Court deems it necessary to amend the Complaint further, based upon additional allegations perceived to have been added during discovery, the Plaintiffs so move that such amendment occur." Plaintiffs misapprehend the nature of Fed.R.Civ.P. 15. This motion, if it can be considered a motion, was made in conjunction with plaintiffs' arguments regarding ILSA and plaintiffs did not provide the court with any proposed amendments.

**29.** Plaintiff Gibbes bought his lot from private individuals who are not parties to this case. The record is devoid of any contract or promises made by any defendant to plaintiff Gibbes. Even if advertising the polo field could be considered a promise, there was no evidence of additional consideration for this hypothetical promise or acceptance.

Plaintiff Termotto is in a similar situation. This court has already determined that Rose

the Rose Hill Covenants and Restrictions,[30] the By–Laws, the "Master Plan," and "myriad binding actions of defendants."

Plaintiffs have failed to show that the Rose Hill Covenants and Restrictions, which never mention the "Equestrian Center," require the conveyance of an "Equestrian Center." [31] As for plaintiffs' reference to "By–Laws," this court presumes that plaintiffs refer to the Declaration of Covenants and Restrictions of the Rose Hill Plantation Property Owners Association, Inc. and the Rose Hill Plantation Development Company ("Declaration").[32] This court has searched in vain through the voluminous papers filed with this case for plaintiffs' arguments regarding their rights under the By–Laws.[33] Plaintiffs have failed to produce sufficient evidence to reasonably support a jury verdict in their favor for breach of any alleged "contract" based on these documents.

The "Master Plan," which is a plan filed in 1984 with the Beaufort County Joint Planning Commission, mentions an "equestrian center of approximately 50 acres." [34] However, plaintiffs are not parties to this Master Plan and have failed to show how this Master Plan can be construed as an obligation by Rose Hill to plaintiffs.[35]

After considering plaintiffs' allegations about defendants' "myriad binding actions," this court is uncertain which doctrine, if any, applies to the present situation. Plaintiffs appear to mesh their ILSA arguments with some phantom common law contract claim. The burden is on the plaintiffs to produce at least some evidence

---

Hill has fulfilled the terms of the property reports. Any promises or reports issued after Termotto purchased his lot cannot qualify as a contract because, again, there was no additional consideration.

**30.** These Covenants and Restrictions are filed with the probate court in Beaufort County, South Carolina.

**31.** The Rose Hill Plantation Covenants and Restrictions, filed in Beaufort County, set forth the restrictions that run with the land in the Plantation. Block R, which refers to the physical location of the stables, was incorporated in these Covenants and Restrictions on March 23, 1989. There is absolutely no discussion in the Covenants and Restrictions of the uses for Block R, except that it is subject to Class A covenants. Amendatory Addendum # 7, at # 2. Class A covenants, which are intended to maintain an "aesthetically pleasing and functionally convenient" development, require that owners seek Rose Hill's approval to build certain structures. The covenants also specify other restrictions regarding the use of residential property, and noise, pets, horses and ponies, lighting, and structures.

The covenants give owners the right to compel compliance with the covenants. Covenants and Restrictions, Part IV, § 2. However, the covenants and restrictions simply do not mention an "Equestrian Center," stables, or the transfer of amenities to the Association.

**32.** Rose Hill and the Association signed this Declaration on December 31, 1981 and filed the document with the probate court in Beaufort County, South Carolina.

**33.** After sifting through the 33–page By–Laws, provided by defendants, this court discovered

that an owner of land may enforce the Declaration. Declaration, Article III, § 1. Although plaintiffs assert that their arguments regarding defendants' responsibilities can be "completely and logically deduced from our initial Amended complaint and subsequent pleadings," plaintiffs have failed to show whether this section is applicable to plaintiffs and precisely which sections of the By–Laws plaintiffs intend to enforce.

**34.** The Declaration defines Master Plan as "the drawing which represents the conceptual plan for the future development of Rose Hill Plantation which is *subject to continuing revision and change by the Company* [Rose Hill]." Declaration, Article I, § 1(m) (emphasis added).

**35.** The Declaration, Article II, § 1, provides that

The Master Plan shall not bind the Company [Rose Hill], its successors and assigns to adhere to the Master Plan in the development of the land shown thereon except as to the (1) general location and approximate acreage of the Common Properties and Restricted Common Properties ... Subject to its right to modify the Master Plan as stated herein, the Company shall convey to the Association properties designated for such conveyance in documents or publications designated by the Company, and in addition, may at its option convey to the Association as provided in Article IV those parcels of land designated on the Master Plan as properties which may be transferred to the Association ... Other than as stated in this paragraph, the Company shall have full power to add to, subtract from or make changes in the Master Plan....

This Declaration clearly states that Rose Hill has the right to modify the Master Plan.

to support their "contract" cause of action. Because they have failed to do so, this court is unwilling to fabricate such a cause of action. Since plaintiffs have failed to support or even clearly state their position, defendants' motion for summary judgment on this cause of action must be granted.

### B. Association Board of Directors

Plaintiffs have sued Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith individually and as members of the Association's Board of Directors. Plaintiffs have not sued the Association. Plaintiffs claim that these individuals have acted outside their scope of authority and alternatively, if this court finds that they have acted within their scope of authority, these defendants are incompetent.[36] Plaintiffs do not allege bad faith, corruption or fraud.

Defendants Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith assert that the Association "is a non-profit South Carolina corporation, and its duly elected Board of Directors is composed of individual property owners who serve on a voluntary basis without remuneration." Defendants' summary judgment motion, at 2. These defendants assert that plaintiffs must join the Association as a necessary party to this action. Plaintiffs assert that plaintiffs are *de facto* representing the interests of the Association and that the Association should not be joined in this action.

According to the South Carolina Secretary of State, the Association was dissolved by forfeiture on January 20, 1986. *See* attachment A. This fact may have significant bearing on plaintiffs' cause of action against these defendants and the parties' motions for summary judgment on this issue.

■ Courts may take judicial notice, whether requested or not, at any point in the proceedings, of a fact which is not subject to reasonable dispute and which is "capable of accurate and ready determina-tion by resort to sources whose accuracy cannot reasonably be questioned." Fed. R.E. 201. "Where a court acts *sua sponte* to take judicial notice, the burden of persuasion rests upon the party who bears the burden of persuasion upon the factual proposition which the noticed fact tends to establish." *In re: Snider Farms, Inc.*, 83 B.R. 977, 997 (Bankr., N.D.Ind.1988). However, procedural fairness demands an opportunity to be heard on the propriety of taking judicial notice. *Id.* Therefore, this court finds it inappropriate to take judicial notice of the record of the South Carolina Secretary of State regarding the Association at this time.

■ Since the legal status of the Association may impact plaintiffs' cause of action against these defendants and the necessity for joining the Association as an additional defendant, plaintiffs' and defendants' motions for summary judgment on this cause of action as to Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith are both denied without prejudice. If either party refiles a motion for summary judgment, that party should (1) ascertain the legal status of the Association, (2) consider whether this court should take judicial notice of this fact, and (3) consider how this fact impacts its position.

### VI. *Sanctions*

Defendants Rose Hill, Burke, Fox & Company and Burke and Fox individually move for Rule 11 sanctions against plaintiffs and plaintiffs' attorney and assert that there is no factual basis for plaintiffs' allegations that defendants promised plaintiffs a 52 acre "Equestrian Center." Defendants Pervier, Rosenbloom, Lehman, Walsh, Brady, Galbraith and Burke also move for sanctions against plaintiffs and plaintiffs' attorney pursuant to Fed. R.Civ.P. 11. These defendants assert that plaintiffs had no factual basis for their allegations against these defendants.

---

**36.** Plaintiffs allege that

the named Defendants comprising the elected Board of Directors for Rose Hill Plantation Property Owners' Association acted in a manner which was not and could not reasonably have been believed to be in the best interests of the Plaintiffs and without such care as an ordinary prudent person in a like position would use under similar circumstances and therefore acted outside the scope of their authority as elected officers of the Association. Plaintiffs' amended complaint at 22.

■ Defendants also suggest that sanctions may be appropriate against the clients,[37] citing *Browning Debenture Holders' Committee v. DASA Corp.*, 560 F.2d 1078 (2nd Cir.1977). In that case, the court held that one party's bad faith could not be automatically visited on a co-party. *Id.* By mentioning this case, defendants appear to allude to the inherent power of the court to sanction a party for bad faith conduct.[38] A court has the inherent power to assess attorney's fees when a party has acted in bad faith or in willful disobedience to a court's orders. *Chambers v. NASCO, Inc.*, ── U.S. ──, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). However, "when there is bad-faith conduct in the course of litigation that could be adequately sanctioned under the rules, the court ordinarily should rely on the rules rather than the inherent power." *Id.* 111 S.Ct. at 2136.

In the instant case, plaintiffs' conduct can be adequately sanctioned under Rule 11. Therefore, this court declines to invoke this inherent power and will confine itself to Rule 11. As such, it is unnecessary to consider whether plaintiffs have acted in bad faith.[39]

### A. Rule 11 Requirements

"[T]he purpose of Rule 11 as a whole is to bring home to the individual signer his personal, nondelegable responsibility." *Pavelic and LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 460, 107 L.Ed.2d 438 (1989). When an attorney signs a pleading, motion, or other paper for submission to a court, that signer is attesting, to the best of her

> knowledge, information and belief formed after reasonable inquiry [that the

document] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11.

■ Rule 11 requires that an attorney conduct a reasonable investigation of the factual and legal basis for the claim before filing. *Brubaker v. City of Richmond*, 943 F.2d 1363, 1373 (4th Cir.1991). "The prefiling factual investigation must uncover some information to support the allegations in the complaint" and some basis in law to support the claims in the complaint. *Id.* An attorney violates Rule 11 if the complaint has "absolutely no chance of success under the existing precedent." *Id.* Rule 11 no longer requires a showing of bad faith. *Snipes v. U.S.*, 711 F.Supp. 827, 832 (W.D.N.C.1989). Rather, the relevant inquiry is whether a specific filing was, if not successful, at least well founded at the time of filing. *Business Guides v. Chromatic Communications Ent.*, ── U.S. ──, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991). Therefore, this court will examine whether the "pleadings, motions or other papers" were based on a reasonable inquiry. Fed.R.Civ.P. 11.

According to the Advisory Committee Notes on the 1983 Amendment to Rule 11, this court has the discretion to impose sanctions on either the signing attorney or the party the signing attorney represents or both. However, the Supreme Court has had "no occasion to determine whether or

---

**37.** Pervier, Rosenbloom, Lehman, Walsh, Brady, Galbraith and Burke specifically made this argument. Defendants Rose Hill and Burke, Fox & Company incorporated this argument in their memoranda.

**38.** The Supreme Court recently held that sanctioning mechanisms such as Rule 11 are not a substitute for a court's inherent power to impose sanctions for bad faith behavior by litigants. *Chambers v. NASCO*, ── U.S. ──, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991). The inherent power to sanction litigants is "both broader and narrower than other means of imposing sanctions." *Id.* For instance, Rule 11

reaches only certain individuals and conduct. *Id.* The inherent power extends to a full range of abuses. *Id.* Rule 11 is broader than the inherent power in that it imposes an objective standard of reasonable inquiry on the parties. *Id.* The inherent power may only be invoked in the presence of a litigant's bad-faith conduct or willful disobedience of a court's orders. *Id.*

**39.** This court does not express an opinion regarding plaintiffs' alleged bad faith. That this court declines to reach the issue of bad faith at this juncture does not foreclose consideration of this issue at a later date.

under what circumstances a nonsigning party may be sanctioned." *Chromatic*, 111 S.Ct. at 935.[40] Therefore, this court will consider sanctioning only the signers of documents presented to the court.

In *Chromatic*, the Supreme Court held that a represented party who signed a paper or pleading is held to an objective standard of reasonable inquiry under Rule 11. *Chromatic*, 111 S.Ct. at 934–935. In *Chromatic*, the company, Business Guides, "failed to conduct a reasonable inquiry before signing the initial TRO application and before submitting the signed declaration of its Director of Research...." *Id.* at 935. Essentially, the Court has held that represented parties may be sanctioned, pursuant to Rule 11, for signing and submitting affidavits which are not supported by reasonable inquiry. *Id.* Therefore, this court may consider imposing sanctions on an attorney or represented party who signs a pleading, motion, or other paper which was not based on a reasonable inquiry. However, in the instant case, this court finds it necessary to consider only the pleadings and motions.

### B. Interstate Land Sale Act Claim

 Regarding plaintiff Gibbes' claims against the defendants Rose Hill, Burke, Fox & Company, and Burke and Fox individually, this court adopted the reasoning of a North Carolina Court of Appeals, *Konopisos v. Phillips*, 30 N.C.App. 209, 226 S.E.2d 522 (1976), that ILSA could not be extended to persons who did not purchase property from a developer or developer's agent. Gibbes' argument for a more liberal interpretation of ILSA may have been plausible but this court was not persuaded to adopt that interpretation. Instead, this court held that Gibbes has no cause of action against these defendants under ILSA.

Gibbes purchased his lot in 1988. In December 1983, a Rose Hill advertisement printed in a Hilton Head Research Group, Ltd. publication mentioned Rose Hill's bridle trails and over fifty acres of pasture. If this court had permitted Gibbes to sue under ILSA, this advertisement may have raised a question of fact under 15 U.S.C. § 1703(a)(2)(B). In deference to the judicial policy of avoiding chilling attorneys' enthusiasm or creativity, this court finds that Gibbes' claim under ILSA may have been plausible when the complaint was filed.[41] Therefore, sanctions for this claim would be inappropriate.

 Regarding Termotto's claims, there is no basis for a cause of action under 15 U.S.C. § 1703(a)(1) against Burke, Fox & Company, since these defendants could not have been involved with the sale of property to Termotto. At the time of filing, before discovery, it may not have been apparent that Burke, Fox & Company began their association with Rose Hill in 1986, four years after Termotto's purchase.[42] Therefore, sanctions for this claim would be inappropriate.

Termotto's property report claim is unsupported, since the property reports did not define stables or docks. However, plaintiff Termotto's current attorney argues that ILSA requires more specificity in property reports. Although this court has denied Termotto's cause of action on the property report, the argument of plaintiff's counsel could be construed as an argument for an extension of existing law. Again, in deference to the desire to avoid chilling attorneys' creativity, this court will not impose sanctions on Termotto's original attorney for this pleading.

At the time of filing, Termotto could have raised a cause of action under

---

**40.** The Supreme Court has refused to sanction a signing attorney's law firm. *Pavelic*, 110 S.Ct. at 460. In *Pavelic*, despite the partnership's knowledge of the possible sanction, the individual signer, not the law firm, was subject to sanctions. *Id.*

**41.** If the court had adopted Gibbes' argument regarding his standing to sue, Gibbes could have raised an ILSA cause of action against Rose Hill, as the developer; Burke, Fox & Company, as the developer's agent; and Burke and Fox,

individually, as corporate insiders of the developer's agent.

**42.** Further, certain plaintiffs, who have now withdrawn from the case, may have purchased their lots after Burke, Fox & Company began their association with Rose Hill. These plaintiffs may have had a cause of action against Burke, Fox & Company and Burke and Fox individually.

§ 1703(a)(1) against Rose Hill for the upkeep of the stables. It appears from the record that the stables were repaired after the complaint was filed. Therefore, sanctions for this claim would be inappropriate.

This court denied defendants' motion for summary judgment on plaintiff Termotto's § 1709(a)(2) action against Rose Hill. This court, quite obviously, finds a factual and legal basis for this claim and thus, sanctions for this claim would be inappropriate.

In summary, plaintiff Gibbes' ILSA causes of action, and Termotto's causes of action under § 1703(a)(1) (against Burke, Fox & Company and Burke and Fox individually), § 1703(a)(1) (property report), § 1703(a)(2) (disrepair of stables) and § 1703(a)(2) (oral representations) were plausible at the time of filing. Therefore, sanctions for the ILSA cause of action would be inappropriate.

### C. Breach of Covenant

This court granted defendants' motion for summary judgment on plaintiffs' second cause of action for breach of a covenant against defendants Rose Hill and Burke, Fox & Company. Sanctions for this claim are appropriate since plaintiffs' attorney cites no law and no facts to support such a cause of action.

Regarding defendants Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith, this court denied defendants' and plaintiffs' motions for summary judgment without prejudice. It is unclear whether plaintiffs have a plausible cause of action against these defendants, because of the question regarding the Association's corporate status. Therefore, this court will not consider allegations against those defendants in the Rule 11 motion.

### D. Plaintiff Gibbes' Objections to the Magistrate Judge's Report and Recommendation

■ Because of the nature of Gibbes' and Termotto's objections to the magistrate judge's report and recommendation, this court raises Rule 11 *sua sponte* on this

issue. Fed.F.Civ.P. 11. The magistrate judge "recommended that the defendants' motions be granted and that sanctions be imposed on plaintiffs' attorney pursuant to Rule 11 of the Federal Rules of Civil Procedure." Plaintiffs, represented by Brian Gibbes, stridently objected to the magistrate judge's report and recommendation.[43]

Plaintiffs' objections one through eight assert that the magistrate judge usurped his authority by determining a summary judgment motion. In most of Brian Gibbes' other objections, he argues that the magistrate judge usurped his authority by making findings of fact and conclusions of law. Contrary to plaintiffs' assertions, the magistrate judge merely made recommendations. He simply complied with Judge Blatt's Order of Reference to "hear and report proposed findings and recommendations on any of the motions specified in the exceptions of 28 U.S.C. § 636(b)(1)(A)." The magistrate judge clearly did not usurp his authority. 28 U.S.C. § 636(b) requires that this court review the report and recommendation *de novo* when a plaintiff objects to the report and recommendation. Plaintiffs' attorney should have read Judge Blatt's order of reference, the magistrate judge's report and recommendation, and 28 U.S.C. § 636(b) more carefully. If he had done so, he would surely have discovered that the magistrate judge merely made a recommendation that this court is required to consider *de novo* when objections are entered. Plaintiffs' objections as to the usurpation of the magistrate judge's authority are patently without merit.

Plaintiffs also object that the magistrate judge erred in concluding that the ILSA cause of action should be dismissed as to defendants Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith. Objections, # 29. This court determined that plaintiffs' amended complaint did not implicate these individuals under ILSA. *See supra* note 7. Based on the clear requirements of ILSA, plaintiffs' attorney has no basis in law for pursuing a cause of action against these individuals. *See supra* § III(A) on

---

**43.** Plaintiff Termotto, represented at this court's hearing on this report and recommendation by George Mullen, sought to distance himself from the tone of Gibbes' objections, although he agreed with Gibbes's assertion that the magistrate judge incorrectly interpreted and applied the law and the facts.

parties. This objection is without merit. Plaintiffs' attorney wastes this court's energies by making such specious objections. He has no basis in law for these objections. Accordingly, this court, *sua sponte*, will impose sanctions as provided by Rule 11.

A party moving for Rule 11 sanctions must provide the opposing party with adequate notice. Advisory Committee Notes on the 1983 Amendment to Rule 11. Rule 11 does not specifically address whether courts must provide notice when raising sanctions pursuant to Rule 11 *sua sponte* except to note that the procedure "must comport with due process requirements." *Id.* The "fundamental requirement of due process is the opportunity to be heard...." *Link v. Wabash Railroad Co.*, 370 U.S. 626, 632, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734 (1962). Although the Fourth Circuit has not specifically addressed this issue, other circuits have required that a party be afforded notice or a hearing. *See Tom Growney Equipment, Inc. v. Shelley Irrigation Development, Inc.*, 834 F.2d 833, 836 (9th Cir.1987) (in assessing Rule 11 sanctions, the court must comply with procedural due process and give the party notice or an opportunity to show cause); *Spiller v. Ella Smithers Geriatric Center*, 919 F.2d 339, 346 (5th Cir.1990) (attorneys should have notice and hearing before Rule 11 sanctions are imposed although due process does not require notice in every instance). Accordingly, it is appropriate for this court to order Brian Gibbes to respond in writing to show cause why he should not be subject to sanctions for his objections to the magistrate judge's report and recommendation.[44]

### E. Amount of Rule 11 Sanctions

■ The primary purpose of Rule 11 sanctions is to deter future litigation abuse. *Miltier v. Downes*, 935 F.2d 660, 665 (4th Cir.1991). In choosing a sanction, the court should award "the least severe sanction adequate to serve the purposes of Rule 11...." *Id.* The court must consider the reasonableness of the opposing party's attorney's fees, the ability to pay and the

factors related to the severity of the violation. *Id.* This does not necessarily mean the actual expenses and attorneys' fees. *Id.*

This court intends to order plaintiffs' attorney to pay the defendants the amount of reasonable expenses incurred in defending the portions of the plaintiffs' complaint that this court has held in violation of Rule 11, including attorneys' fees. Therefore, this court orders defendants to inform the court of the costs of this defense within 15 days of the date of this order.

### VII. *Conclusion*

It is, therefore,

ORDERED that defendants' motion for summary judgment be GRANTED as to plaintiff Gibbes' first cause of action. It is further

ORDERED that defendants' motion for summary judgment be GRANTED as to plaintiff Termotto's first cause of action against defendants Burke, Fox & Company and Burke and Fox individually. It is further

ORDERED that defendants' motion for summary judgment be GRANTED as to plaintiff Termotto's first cause of action alleging violations of 15 U.S.C. § 1703(a)(1). It is further

ORDERED that plaintiffs' and defendants' motion for summary judgment be DENIED as to plaintiff Termotto's first cause of action alleging violations of 15 U.S.C. § 1703(a)(2). It is further

ORDERED that defendants' motion for summary judgment be GRANTED as to plaintiffs' second cause of action against defendants Rose Hill and Burke, Fox & Company. It is further

ORDERED that plaintiffs' and defendants' motions for summary judgment be DENIED WITHOUT PREJUDICE as to plaintiffs' second cause of action against plaintiffs Pervier, Rosenbloom, Lehman, Walsh, Brady and Galbraith. It is further

ORDERED that plaintiffs' attorney, Brian Gibbes, be SANCTIONED for bringing

---

44. This court will order Brian Gibbes to respond only to the Rule 11 sanctions raised by this court *sua sponte*, not sanctions that were recommended by defendant. Plaintiffs have already received adequate notice of and opportunity to respond to the motions for those Rule 11 sanctions.

the second cause of action against defendants Rose Hill and Burke, Fox & Company. It is further

ORDERED that plaintiffs' attorney, Brian Gibbes, respond in writing to this court's PROPOSED ORDER TO IMPOSE SANCTIONS for the plaintiffs' objections to the magistrate judge's report and recommendation within 15 DAYS OF THE DATE OF THIS ORDER. It is further

ORDERED that defendants inform the court of the costs of defending the portions of the plaintiffs' complaint which this court has determined in violation of Rule 11 and of the costs of rebutting the plaintiffs' objections to the magistrate judge's report and recommendation within 15 DAYS OF THE DATE OF THIS ORDER.

IT IS SO ORDERED.