AMERICAN SAVINGS BANK, F.S.B., Plaintiff,

v.

UBS PAINEWEBBER INC., Defendant.

No. CIV. 01–00158 DAE LEK.

United States District Court, D. Hawai'i.

March 13, 2003.

See, also, 210 F.R.D. 721

Paul Alston, David A. Nakashima, David M. Forman, Alston Hunt Floyd & Ing Pacific Tower, Honolulu, HI, Robert T. Sullwold, Sullwold & Hughes, San Francisco, CA, for American Savings Bank, plaintiff.

William C. McCorriston, Mark J. Bennett, Nadine Y. Ando, McCorriston Miller Mukai MacKinnon LLP, Honolulu, HI, Harris Weinstein, Sean Hecker, Linda C. Goldstein, Sonya D. Winner, Roni R. Reed, David M. Jolley, Covington & Burling, San Francisco, CA, for UBS Painewebber Inc., defendant.

*ORDER DENYING ASB'S MOTION FOR PARTIAL SUMMARY ADJUDICATION RE COUNT ONE (VIOLATION OF HAWAII UNIFORM SECURITIES ACT) WITH RESPECT TO THE COLUMBUS TRUST TRANSACTION; ORDER DENYING ASB'S MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING COLUMBUS TRUST II*

DAVID ALAN EZRA, Chief Judge.

The court heard Plaintiff American Savings Bank's ("ASB's") Motions on March 3, 2003. Paul Alston, Esq., David A. Nakashima, Esq., and Dianne Winter Brookins, Esq., appeared at the hearing on behalf of Plaintiff; Sonya D. Winner, Esq., and Lorraine H. Akiba, Esq., appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court DENIES ASB's Motion for Partial Summary Adjudication Re Count One (Violation of Hawaii Uniform Securities Act) with Respect to the Columbus Trust Transaction; and DENIES ASB's Motion for Partial Summary Judgment Regarding Columbus Trust II.

## BACKGROUND

Plaintiff American Savings Bank ("ASB") is a federally regulated savings and loan (or a "thrift institution"). In 1998 and 1999, ASB considered purchasing collateralized debt obligations ("CDOs").

In May 1999, ASB met in New York with Tina Li ("Ms.Li"), a broker from Defendant PaineWebber ("PaineWebber"), and others. ASB sought information about securities based on CDOs, collateralized bond obligations ("CBOs"), and collateralized loan obligations ("CLOs"). In July 1999, Ms. Li and other PaineWebber employees came to Hawaii to meet with ASB about these securities.

Eventually, PaineWebber settled on a new type of security, which consisted of CLO equity, which was wrapped with a privately-issued swap agreement that functioned like a zero-coupon bond to provide protection for the recovery of principal invested.

In May 2000, OTS examined ASB and questioned whether investments that were rated only as to principal were legal investments for a thrift to own, and in December 2001, published a public statement questioning the legal permissibility of such investments. ASB chose not to appeal the findings of the examiners and ultimately disposed of the investments at a loss.

ASB initiated a lawsuit against PaineWebber alleging, among other things, violations of Hawaii Revised Statute ("HRS") Section 485–25(a)(2). On October 15, 2002, ASB filed its (1) Second Motion for Partial Summary Adjudication Re Count One (Violation of Hawaii Uniform Securities Act) with Respect to the Columbus Trust Transaction ("Columbus Trust Motion") and (2) Motion for Partial Summary Judg-

ment Regarding Columbus Trust II ("Columbus Trust II Motion") (collectively, the "Motions"). On February 6, 2003, PaineWebber opposed both Motions. *See* Defendant UBS PaineWebber Inc.'s Opposition to ASB's Columbus Trust Motion, filed Feb. 6, 2003 ("Columbus Trust Opposition"); Defendant UBS PaineWebber Inc.'s Opposition to ASB's Columbus Trust II Motion, filed Feb. 6, 2003 ("Columbus Trust II Opposition"). ASB replied to both Motions on February 20, 2003.

In its Columbus Trust Motion, PaineWebber argues that it is entitled to summary judgment with respect to Count One of its Complaint to the extent that it applies to the Columbus Trust Transaction. In its Columbus Trust II Motion, ASB moves for partial summary judgment, arguing that PaineWebber violated HRS § 485–25 because it "falsely described Invesco's performance and the value of Columbus Trust through misrepresentation and omission" by "failing to disclose Columbus' performance problems and the secret agreements that enhanced the early cash flow and created the misleading appearance of success." Columbus Trust Motion II at 16.

### STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party has the initial burden of "identifying for the court those portions of the materials on file in the case that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant

probative evidence tending to support its legal theory. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979). The opposing party can neither stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *See T.W. Elec. Serv.*, 809 F.2d at 630; Fed. R.Civ.P. 56(e). In a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party. *State Farm Fire & Casualty Co. v. Martin*, 872 F.2d 319, 320 (9th Cir.1989).

### DISCUSSION

Both of ASB's Motions are based upon alleged violations of HRS § 485–25(a)(2), which provides:

> It is unlawful for any person, in connection with the offer, sale, or purchase (whether in a transaction described in section 485–6 or otherwise) of any security (whether or not of a class described in section 485–4), in the State, directly or indirectly:
>
> \*    \*    \*    \*    \*    \*
>
> (2) To make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;

Haw.Rev.Stat. § 485–25(a)(2) (2002).

ASB argues that HRS § 485–25 does not require an element of "scienter" or "reliance." For the reasons set forth below, the court concludes that HRS § 485–25 does, in fact, require a showing of scienter and reliance.

#### A. *Scienter*

■ ASB argues that HRS § 485–25 does not require an element of scienter. ASB relies primarily upon *Disandro v. Makahuena Corp.*, 588 F.Supp. 889, 893 (D.Haw.1984), to support its argument. In

*Disandro,* the court ruled that the plaintiffs did not need to prove scienter under HRS § 514A–68,[1] a statute that prohibits material misrepresentations and omissions in the sale of condominium units in Hawaii. In arriving at this conclusion, the court first compared HRS § 514A–68 to 17 C.F.R. § 240.10b–5 ("Rule 10b–5"),[2] adopted pursuant to the 1934 Securities Exchange Act, which federal courts have interpreted as including a scienter requirement. *Id.* at 893 (citing *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 201, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976)). The *Disandro* court recognized that courts require scienter as part of Rule 10b–5 because the title of the rule refers to the employment of "deceptive" or "manipulative" practices in the sale of securities. *Id.* at 893.

The court then compared HRS § 514A–68 to Section 17(a)(2) of the 1933 Securities Act, 15 U.S.C. § 77q(a)(2) ("Section 17(a)(2)"), and found that HRS § 514A–68 is closer to Section 17(a)(2) than it is to Section 10b–5. The court noted that Section 17(a)(2) does not contain "words that are inherently laden with intentional conduct, like 'manipulative' or 'deceptive.'" *Id.* The court noted that since nothing on the face of Section 17(a)(2) suggests a scienter requirement, Plaintiffs do not

need to prove scienter in order to recover under that statute. *Id.* By analogy, the court concluded that HRS § 514A–68 also has no scienter requirement because, like Section 17(a)(2), HRS § 514A–68 does not contain any words like "deceptive" or "manipulative," but rather, only speaks of the inclusion of false statements and omissions of material fact. *Id.*

Here, HRS § 485–25 does not have the express "deceptive" or "manipulative" language that the title of Section 10b–5 has. Therefore, ASB argues, HRS § 485–25 is akin to HRS § 514A–68, and thus does not require that a plaintiff establish scienter. Moreover, ASB argues that the legislative history of HRS § 485–25 bolsters its interpretation that it need not prove scienter.[3] ASB cites the Hawaii State Legislature's Standing Committee Report, which stated that the overriding purpose of Hawaii's Uniform Security Act was "to afford greater protection to purchasers of securities by making available to them pertinent information concerning the security and the issuer thereof[.]" Plaintiff's Amended Consolidated Memorandum in Opposition to PaineWebber's Motions for Partial Summary Judgment on Plaintiff's HRS § 485–25 Claim, filed Feb. 7, 2003, at 48 (citing Stand. Comm. Rep. No. 931, re-

---

1. HRS § 514A–68 provides:

   [N]o person may issue, circulate, publish, or distribute any advertisement, pamphlet, prospectus, or letter concerning any project which contains any written statement that is false or which contains an *untrue statement of a material fact or omits to state a material fact necessary in order to make the statements therein made in the light of the circumstances under which they are made not misleading.*

   Haw.Rev.Stat. § 514A–68 (2002) (emphasis added).

2. Section 10(b) of the Securities Exchange Act of 1934 is entitled, "Employment of manipulative and deceptive devices." 17 C.F.R. § 240.10b–5.

3. At the hearing, ASB argued that the Hawaii State Legislature would have expressly included a scienter requirement in HRS § 485–25 if that is what it intended. ASB noted that the Legislature includes an element of knowledge in HRS § 482E–9, and argued that the absence of such language in HRS § 485–25 indicates that no such element is required.

   The court, however, finds that the absence of an express scienter requirement in HRS § 485–25 is not fatal to PaineWebber's assertion that such a requirement exists. The Legislature expressly indicated that HRS § 485–25 was based on federal law. Like HRS § 485–25, the federal government's Section 10b–5 does not expressly require scienter to be proven as an element. Nevertheless, courts construe Section 10b–5 as containing a scienter requirement.

printed in 1957 House Journal, at 899–900). ASB argues that a scienter requirement would undermine HRS § 485–25's legislative purpose because it would make it more difficult for purchasers of securities to obtain pertinent information concerning their investments. *Id.*

The court, however, finds that the legislative purpose and history of HRS § 485–25 compels a conclusion that HRS § 485–25 does contain a scienter element. First, the legislative purpose of HRS § 485–25 is different from HRS § 514A–68, and thus any similarities between the two statutes' language does not amount to a conclusion that HRS § 485–25 does not require scienter. In *Disandro*, the court considered the legislative history of HRS § 514A–68 and noted that it was a consumer protection statute. *Id.* at 893. Thus, the court concluded that HRS § 514A–68's "consumer protection orientation" did not require plaintiffs to prove scienter. *Id.* at 894. Here, however, Plaintiff brings its claims pursuant to HRS § 485–25, which is a *fraud* statute. To construe it in any other fashion would contradict the legislative purpose of HRS § 485–25,[4] which both the Ninth Circuit and the Hawaii Supreme Court have recognized as a "general prohibition against fraud and deceit in connec-tion with the purchase and sale of securities." *Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 391 (9th Cir.1988); *Young v. Kwock*, 52 Haw. 273, 474 P.2d 285, 287 n. 4 (1970). *See also* Standing Committee Report No. 231, reprinted at 1957 Sen. J. 520, 521.

Moreover, after the court filed its *Disandro* opinion, it became clear in the Ninth Circuit that Section 17(a)(2), which the *Disandro* court relied upon to conclude that HRS § 514A–68 has no scienter requirement, does not provide for private rights of action. *See In re Washington Publ. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1358 (9th Cir.1987) (en banc). Thus, any analysis based upon Section 17(a)(2) provides little guidance to the court in determining whether HRS § 485–25, which does provide for a private right of action, contains a scienter requirement.

Second, the absence of the words "fraud," "deceit," or "manipulative," from HRS § 485–25(a)(2) does not necessarily reflect the legislature's intent to eliminate a scienter requirement from the statute. As explained above, Section 10b–5 requires a plaintiff to prove scienter, even though its text does not contain any of the key words ASB contends are necessary for a scienter requirement.[5] Additionally, the

---

4. ASB argues that, even if HRS § 485–25 is recognized generally an anti-fraud statute, HRS § 485(a)(2), the specific provision at issue in this case, does not address "fraud." *See* Plaintiff's Amended Consolidated Memorandum in Opposition to PaineWebber's Motions for Partial Summary Judgment on Plaintiff's HRS § 485–25 Claim, filed Feb. 7, 2003, at 47–48. ASB notes that HRS § 485–25(a)(1) prohibits "any device, scheme or artifice to defraud," and HRS § 485–25(a)(3) prohibits "any act, practice or course of business which operates ... as a fraud or deceit," whereas HRS § 485(a)(2) makes no specific mention to the words "fraud" or "deceit." *Id.* However, the court notes that the judicial interpretations that recognize HRS § 485–25 as an anti-fraud statute refer to the *entire*

statute, and not just the specific subsections that ASB suggests.

5. Section 10b–5 provides:

§ 240.10b–5. Employment of manipulative and deceptive devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of national securities exchange,

\* \* \* \* \* \*

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading
. . . .

Hawaii State Legislature expressly stated that HRS § 485–25 was based on federal law, including judicial interpretations. *See* Standing Committee Report, reprinted at 1957 Sen. J. 520, 521. Accordingly, the court finds that HRS § 485–25 is a fraud statute which, consistent with the federal securities fraud statute, includes a scienter requirement.

## B. *Reliance*

■ ASB also argues that HRS § 485–25 has no element of reliance. ASB again relies upon *Disandro,* in which the court concluded, "The plain language of the Hawaii statute and the analogies to statutes similar in wording and purpose lead this court to conclude that plaintiffs will not have to prove reliance as an element to their claims under sections 514A–68 and 514A–69." *Disandro,* 588 F.Supp. at 895. The court first examined the plain language of HRS § 514A–68 and concluded, "The legislative intent was to create an open, honest condominium market. To require individual purchasers to prove reliance would thwart that legislative goal." *Id.* at 894.

Next, the court compared HRS § 514A–68 to the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1703(a), in which "Congress expressly recognized that 'the purchaser's actual reliance would no longer have to be an element of proof . . . .'" *Id.* at 895 (quoting H. Rep. No. 96–154, 96th Cong., 1st Sess. 35, *reprinted in* 1979 U.S.Code Cong. & Ad. News 2317, 2351). The court concluded that because "reliance is subsumed in a general way into the definition of materiality . . . reliance is not an element of many federal securities causes of action." *Id.*

For these same reasons, ASB argues, reliance is not an element in actions under HRS Chapter 485.

17  C.F.R. § 240.10b–5 (2002).

PaineWebber argues, however, and the court agrees, that the legislative history of the statute compels finding an element of reliance in HRS § 485–25. In cases involving civil liability on a federal securities fraud claim, the United States Supreme Court has recognized that "reliance is an element of a Rule 10b–5 cause of action." *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). Moreover, common law fraud in Hawaii also requires an element of reliance. *See Nakamoto v. Hartley,* 758 F.Supp. 1357, 1366 (D.Haw.1991) ("Hawaii law requires not only that the defendant make a misrepresentation, but also that the plaintiff rely on that particular misrepresentation"). The element of reliance in the federal securities fraud statute and Hawaii's common law on fraud leads this court to conclude that reliance is an essential element of HRS § 485–25 as well.

ASB concedes that "summary judgment is not appropriate" if it "must prove scienter and reliance in order to prevail under HRS § 485–25(a)(2)." Reply Memorandum in Support of Columbus Trust Motion at 16. Accordingly, ASB does not attempt to establish the requirements of scienter and reliance in its Motions. Thus, the court finds that ASB has not met its initial burden of demonstrating that there is no genuine issue of material fact, and therefore DENIES ASB's Motions.

## CONCLUSION

For the reasons stated above, the court DENIES (1) ASB's Motion for Partial Summary Adjudication Re Count One (Violation of Hawaii Uniform Securities Act) with Respect to the Columbus Trust Transaction and (2) DENIES ASB's Mo-

tion for Partial Summary Judgment Regarding Columbus Trust II.

IT IS SO ORDERED.