Eulalie BRYAN, Plaintiff,

v.

AMREP CORPORATION et al., Defendants.

No. 75 Civ. 5911.

United States District Court, S. D. New York.

March 17, 1977.

Mordecai Rosenfeld, New York City, for plaintiff.

Jacobs, Persinger & Parker, New York City, for defendants. I. Michael Bayda, New York City, of counsel.

## MEMORANDUM

LASKER, District Judge.

Eulalie Bryan sues under the Interstate Land Sales Full Disclosure Act, (ILSFDA) 15 U.S.C. §§ 1703, 1709, and moves to certify the suit as a class action.

On September 23, 1973, Bryan entered into a "Reservation and Purchase Agreement" (land sales contract) for two one-half acre lots (numbers 39 and 40 in Block 146) in the Rio Rancho Estates at a price of $6,140. The land sales contract signed is identical in all respects (other than price, down payment schedule and lot location) to that described in *Husted v. Amrep*, D.C., 429 F.Supp. 298 also decided today. On March 13, 1974, Bryan signed a "Property Exchange Amendment" with Rio Rancho Estates whereby lot 40 was eliminated from her contract and the purchase price reduced to $3,150.

Following the FTC complaint and criminal indictment described in the *Husted* opinion, *supra,* Bryan filed her complaint on November 21, 1975. She charges defendants with scheming to defraud her and other class members by inducing them to pay $6,000. per acre for New Mexico land that was "virtually worthless," by means of various sales techniques and misrepresentations described in the indictment and incorporated by reference in the complaint. (¶¶ 9–10) In addition to charging the defendants with engaging in a fraudulent scheme prohibited by 15 U.S.C. § 1703, the complaint charges that in violation of § 1709 of the Act

"defendants sold lots by use of a statement of record which contained untrue statements of material facts and omitted to state material facts. Among other things, the statement did not reveal that the land being sold (a) was virtually worthless, and (b) had been purchased by defendants for $180 per acre and was

appraised in 1973 at $165 per acre." (¶ 12 of the Complaint)

Plaintiff seeks to represent "those purchasers (from November 21, 1972 forward) who purchased property in an 'undeveloped area' [of Rio Rancho Estates] and who have not exchanged their property for a lot in a developed area (i. e. an area with water, electricity, sewerage and telephones)." (Plaintiff's Reply Memorandum at 4.) [1]

To maintain a class action, plaintiff must satisfy all the requirements of Rule 23(a), Fed.R.Civ.P.:

> "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of fact or law common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."

and, in addition, one of the requirements of Rule 23(b). Plaintiff relies on Rule 23(b)(3), which requires a showing that

> "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Defendants concede that the numerosity requirement of (a)(1) is satisfied but contend that plaintiff has not met the remaining requirements of Rule 23(a) or those of Rule 23(b)(3).

### I.

■ For reasons that will become apparent, we consider first the appropriateness of a class with respect to the claim asserted in Paragraph 12, namely, that in violation of § 1709(a) defendants sold lots covered by a statement of record containing untrue statements of material fact and omitting to state material facts required to be stated. Plaintiff need show only that her lot was covered by a statement of record containing untrue statements of material fact or omitting material facts required to be stated. Any question of fact or law concerning the materiality or truth of statements made or not made will be common to the class. Thus, the requirement of Rule 23(a)(2) is met.

■ The typicality requirement of Rule 23(a)(3) and the "predominance" requirement of Rule 23(b)(3) may be treated together. Defendants urge that the measure of damages will vary from lot to lot, necessarily creating individual questions which will predominate over common questions. They argue that the actual value of each lot (which must be ascertained to determine damages under § 1709(c)) will vary depending on its exact location, and size, improvements made, and the condition of nearby lots. The argument proves too much, since it would in effect defeat any class action under the ILSFDA because land is almost never as fungible as are stocks or other securities. In any event, such variations are minimized by the limitation of the class to purchasers of land in undeveloped areas. Even in cases involving fungible items, the amount of damage is invariably an individual question and does not by itself bar a class action. See *Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir. 1975) *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). The possible need for later separate determinations of each purchaser's damage claim does not defeat the overall utility of allowing plaintiff to bring a class action. See *Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969); *Partain v. First National Bank of Montgomery,* 59 F.R.D. 56, 59 (M.D.Ala.1973). Defendants,

---

1. Plaintiff modified and restricted the definition of the proposed class in her reply memorandum in response to certain arguments made by the defendants in opposition to the class originally proposed in the complaint ("all persons who, from November 21, 1972 to date, purchased real estate in the Rio Rancho Estates from defendants" ¶ 2(a) Complaint). We assume that by her reply memorandum plaintiff informally modified the class definition proposed in ¶ 2(a) of the Complaint.

if found liable, would be free to move to set aside the class treatment of damage computation.

■ One issue not touched on in defendants' memorandum but relevant to questions of predominance and typicality is raised by the provision of § 1709(a) that proof of plaintiff's actual knowledge of the claimed misstatements or omissions at the time of purchase is an affirmative defense. Although the complaint alleges that neither plaintiff nor other class members knew or could have known of the alleged misstatements or omissions prior to the filing of the criminal indictment in October, 1975 (¶ 13), from November 21, 1972 through November 21, 1975 the defendants sold residential lots in Rio Rancho Estates to purchasers in 22 states and 11 foreign countries through the services of 50 licensed real estate brokers. Purchasers in different states may have received differing or additional information, required by state law. Knowledge of additional facts, at earlier times, by different members of the class may create individual issues as to when the one year limitations period applicable to such claims was triggered [2] and whether the purchaser knew at the time of purchase of the claimed omission or misstatement in the federal reports by virtue of material included in the state documents. Moreover, defendants claim that on May 28, 1975 a revised federal Property Report was issued which included information concerning the FTC charges. Persons purchasing after that date may also stand on a different footing with regard to knowledge at the time of purchase. Finally, as defendants do point out, many persons in the proposed class visited their lots within six months of purchase; these persons may, by virtue of their visits, have been put sufficiently on notice of any wrongdoing to trigger the running of the limitation period.

Should discovery establish that such individual factual problems actually exist, several courses of action are open. Class certification may be terminated, or the class modified. Alternatively, subclasses may be established according to, e. g., what states the purchasers were from; whether they purchased within one, two or three years of the filing of the complaint; [3] or whether they visited the property before or at the sale, or within six months of purchase.

In all other respects, plaintiff's claims under § 1709(a), asserted in ¶ 12 of the complaint, are representative of those of her class, since the identical omissions and misrepresentations would affect all members of the class alike. The Act seeks to protect any person who purchases land covered by statements of record which are misleading, or omit to state material facts. Oral solicitations or representations, if any, made in connection with the sale of lots do not affect a developer's liability under § 1709(a). To establish liability under this section, a plaintiff is not required to prove that each purchaser relied in some way on the omission or misrepresentation but only that a material misrepresentation or omission existed in the statement of record at the time the property was sold. See *Hoffman v. Charnita, Inc.,* 58 F.R.D. 86, 90–91 (M.D.Pa.1973). In light of this analysis, we find that common questions of fact and law presently predominate over individual issues on the § 1709(a) claim asserted in ¶ 12, and that plaintiff satisfies the typicality requirement with respect to this claim.

■ Plaintiff is represented by competent and experienced counsel, who will fairly and adequately represent the interests of the class on this claim. Nevertheless, the adequacy of her representation of the class on this claim, as well as that arising under § 1703 and asserted in ¶ 11, is challenged by defendants on the grounds that insofar as

2. Claims for violations of § 1709(a) must be "brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 1711.

3. Subclasses established according to the dates of initial purchase, as suggested above, may prove useful to disposition of the § 1703 claims discussed in Part II, *infra,* as well as the § 1709(a) claims.

plaintiff is seeking both rescission and damages the interests of class members desiring rescission will be in conflict with those who seek money damages. They rely on such cases as *Lukenas v. Bryce's Mountain Resort,* 66 F.R.D. 69 (W.D.Va.1975) in which the court held that an action in which the only relief sought was rescission could not properly be maintained as a class action under the ILSFDA where only 190 out of 610 members of the class would desire to remain in the class. The court particularly noted that the interest of those who desired rescission was "clearly antagonistic to that of those purchasers who have a continuing interest in the financial viability of the defendant." 66 F.R.D. at 72. Similarly, in *White v. Deltona Corp.,* 66 F.R.D. 560 (S.D. Fla.1975) the court found that plaintiff's request for punitive damages was not consonant with the financial viability of a residential community, and that plaintiff's interests as the representative party were therefore antagonistic to those of the class members.

At this stage of the instant case, however, the possibility of such antagonistic interests between plaintiff and other class members is too speculative to control decision on the motion, particularly in light of the limitation of the class to those who own land in the undeveloped areas of Rio Rancho Estates. Should any substantial conflict emerge in the course of the litigation or in response to notice to the class, it may be obviated if necessary by such devices as establishing subclasses pursuant to Rule 23(c) and (d) or by redefining the class. See, e. g., *Tober v. Charnita,* 58 F.R.D. 74 (M.D.Pa.1973); *Tucker v. Arthur Anderson & Co.,* 67 F.R.D. 468 (S.D.N.Y.1975).

■■■ The remaining question as to the § 1709(a) claim asserted in ¶ 12 is whether a class action is superior to alternative methods of conducting the litigation. Defendants claim it is not because (a) the amounts involved are sufficient to insure individual litigation of the claims; (2) since common

questions do not predominate, individual suits would be more manageable than a class action;[4] and (3) the pending FTC enforcement proceeding is a superior method of assuring relief to class members.

The amounts at issue in these cases are at best on the borderline of feasibility of individual litigation. Most members of the class, it appears, paid between $3,000. and $6,000. for their lots and under 15 U.S.C. § 1709(c) no person can recover more than was paid for the lot. Although other courts have found that persons similarly situated would not be precluded from pursuing their claims if class action status were denied, see, e. g., *Andrews v. Rio Rancho Estates, Inc.,* Civ. Action No. 73–58Y (N.D.Ohio Feb. 22, 1974), p. 5, the proposition is regrettably doubtful in this District. But see *Domaco Venture Capital Fund v. Teltronics Services, Inc.,* 551 F.2d 508 (2d Cir. 1977). It can at least be said that individual damages here are not "manifestly a sum substantial enough to make individual litigation feasible," *Ingenito v. Bermec Corp.,* 376 F.Supp. 1154, 1171 (S.D.N.Y.1974). Moreover, even individuals with sizable damage claims may, due to ignorance of their legal rights, not seek redress—or not seek redress in time— through individual lawsuits. See *Moscarelli v. Stamm,* 288 F.Supp. 453, 463 (E.D.N.Y. 1968). Where there is a need to remedy a common legal grievance, and where a class action serves to achieve economies of time, effort and expense, it is "superior" to other forms of litigation even though individual claims are large.

The status of the FTC action is unclear. Defendants claim that the FTC has power to and has sought refunds on behalf of all members of the proposed class. Plaintiff contends that the Commission lacks power to seek refunds for persons who purchased land before January, 1975. See 15 U.S.C. § 57b. Whichever is correct, the FTC has apparently not yet taken any step towards procuring refunds for injured members of the class. The possibility that the FTC may

4. Since we have found that common questions do predominate, see pp. 316–317, *supra,* this argument does not merit discussion.

at some future time secure refunds for the class is not an adequate reason to deny a class determination in this case, which seeks present and independent relief. If the FTC proceeding should ever assure the rights of the parties, defendants may apply for a stay of this action or for other appropriate relief.

In sum, in the present posture of the case plaintiff has satisfied the requirements of Rule 23(a) and 23(b) (3) on her claim alleging violations of § 1709(a).

## II.

The question of whether a class should be certified as to the § 1703 claims alleged in Paragraph 11 of the complaint is considerably more complex. Defendants argue, in addition to the points discussed in connection with the § 1709(a) claim, that (a) individual issues will necessarily predominate on what are essentially claims of fraud; and (b) plaintiff does not meet the typicality requirement of Rule 23(a)(3) because her own claim for violations of § 1703 is time-barred. For reasons set forth below, we conclude that it is appropriate conditionally to certify a class on this claim as well.

### A. Predominance of Common Questions

█ Paragraph 11 charges that the defendants:

"(a) employed a devise, scheme and artifice to defraud or

(b) obtained money and property by means of material misrepresentations with respect to statements of record or the property report or with respect to any other information pertinent to the lot . . . upon which the purchasers rely; or

(c) engaged in a transaction, practice or course of business which operates or would operate as a fraud or deceit upon each class member."

The "details of defendants' common plan and scheme," as set forth in the complaint, include a mixed bag of alleged misrepresentations concerning, for example, such matters as the risk of investment; the availability of water and other utilities; and Rio Rancho's relationship to the growth rate of Albuquerque, which were presented in various forms, such as movies, advertisements and oral statements by salespersons. Most courts which have dealt with such an olio have concluded that they are not suitable for class treatment. See *Moscarelli v. Stamm,* 288 F.Supp. 453, 462 (E.D.N.Y. 1968); *Morris v. Burchard,* 51 F.R.D. 530, 534 (S.D.N.Y.1971). Reliance is an element of a § 1703(a)(2) claim based on misrepresentations, at least under § 1703(a)(2)(B), and must be proven on an individual basis; it is normally an individual issue of substantial importance. See *Siebert v. Great Northern Development Co.,* Civ. Action No. 17349 (N.D.Ga., Nov. 1, 1973); *Wright & Miller,* 7A *Federal Practice & Procedure* § 1781, at 94–95. For these reasons, class action status has been denied in other suits brought for violations of § 1703(a)(2). *Siebert v. Great Northern Development Co., supra; Andrews v. Rio Rancho Estates, Inc.,* Civ. Action C 73–58Y (N.D.Oh., Feb. 24, 1974).

█ Nevertheless, although individual issues loom larger in the § 1703 claim than on the § 1709(a) claim they do not automatically defeat the motion to certify a class. Of key significance is the allegation in ¶ 7 of the complaint that

"Defendants, knowingly and willfully, devised and carried out a common plan, scheme and artifice to defraud members of the class. The purpose of the common plan was to induce members of the public to pay more than $6,000 an acre for land that was virtually worthless."

The existence of a common plan, pursuant to which a common course of conduct occurred, *is* a class issue. See *Mascolo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 61 F.R.D. 481 (S.D.N.Y.1973); *Epstein v. Weiss,* 50 F.R.D. 387, 393 (E.D.La.1970). At the heart of the common plan and course of conduct plaintiff alleges a complete failure to advise purchasers that the land was "vir-

tually worthless" or had been appraised at under $200/acre. "[T]he fact that some oral misrepresentations may have been made does not require the court to dismiss [sic] the action under Rule 23(b)(3) if the real basis of plaintiff's complaint is . . a complete failure to disclose any material fact." *Wright & Miller, supra,* § 1781 at 94. Accord, *Esplin v. Hirschi,* 402 F.2d 94, 99–100 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Vernon J. Rockler & Co. v. Graphic Enterprises Inc.,* 52 F.R.D. 335 (D.Minn.1971). Indeed, to the extent that plaintiff proves violations of § 1703(a)(2)(A), (C) by evidence of a complete omission of a material fact, proof of reliance is not required and the only remaining individual issue would be damages. See *Affiliated Ute Citizens of Utah v. United States,* 406 U.S. 128, 150–54, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972).

██ The foregoing analysis demonstrates that common issues may predominate over individual issues on the § 1703 claim alleged in ¶ 11.[5] In such circumstances there are two possible approaches to deciding the motion: One is to deny the class action without prejudice to the plaintiff's renewing the motion upon showing, after discovery, that common questions do in fact predominate over noncommon questions. This course may be called the condition precedent approach. The condition subsequent approach is to allow class certification at the present time subject to motion by the defendants after completion of a suitable period of discovery to dissolve the class on the grounds that common questions do not predominate. We favor the latter approach on the grounds that it is more efficient to deal with the case as a class action (in view of the fact that plaintiff's § 1709(a) claims have been approved as class claims) and because the earlier a class is notified of a pending claim the more effective such notification will be and the more coherently a class can act or be represented. These constitute advantages for the plaintiff if the claims are eventually tried as class claims and impose no ultimate disadvantage on the defendant.[6]

The ultimate test will be whether common questions predominate and whether trial of the case on a class basis will be manageable. If, upon completing discovery as to misrepresentations (which should proceed first and be completed within 90 days except as extended by the court) it appears that plaintiff's evidence at trial on the § 1703 claims will consist primarily of misrepresentations not presented to all class members in relatively standardized form, defendants may move to dissolve the § 1703 class.

---

5. Even the allegations of different affirmative misrepresentations do not automatically defeat class certification as to those claims. As they are alleged the misrepresentations do not appear to be a "disconnected series of oral statements . . . seemingly not made pursuant to a common course of conduct," and the complaint alleges that the misrepresentations were made to *all* members of the class. See *Morris v. Burchard, supra,* 51 F.R.D. at 534. Furthermore, it is not claimed that the misrepresentations were made only orally, but also in various printed and filmed matter. Discovery may narrow the scope of the misrepresentations which plaintiff will seek to prove at trial to those appearing in standardized form in advertising material provided all purchasers. See *Zeigler v. Gibralter Life Insurance Co.,* 43 F.R.D. 169 (D.S.D.1967). At this preliminary stage of the litigation, it cannot be intelligently determined whether the claimed fraud was "perpetrated on numerous persons by the use of similar misrepresentations . . . [or whether] there was material variation in the misrepresentations made or in the kind or degrees of reliance by persons to whom they were addressed." *Advisory Committee's Notes,* Rule 23, 39 F.R.D. 69, at 103 (1966).

Of course, even if the same affirmative misrepresentations were made to all members of the class, reliance would still be an issue. However, *Green v. Wolf Corp.,* 406 F.2d 291 (2d Cir. 1968), *cert. denied,* 395 U.S. 977, 89 S.Ct. 2131, 23 L.Ed.2d 766 (1969), teaches that since reliance is a critical element in every Rule 10b–5 case, to hold that reliance as an individual issue necessarily predominates over such common issues as the existence of misrepresentations would be inappropriate because it would prevent certification of *any* class. The court suggested separate trials as to reliance where necessary. Accord, *Entin v. Barge,* 60 F.R.D. 108 (E.D.Pa.1973).

6. Such conditional certification is contemplated and authorized by Rule 23(c)(1).

## B. Typicality

██ Defendants claim that since plain- tiff purchased her lots in September, 1973 and did not file her complaint until November, 1975, her § 1703 claims are barred by the two year limitations period contained in § 1711 and therefore that she cannot represent the class on these claims. Plaintiff seems to concede that any claims arising out of her purchase of two lots in September, 1973 are barred by the two year statute of limitations for "violations" of § 1709(b)(1) [§ 1703]. See 15 U.S.C. § 1711. She argues, however, that a new sale occurred in March, 1974, when by a "Property Exchange Amendment" her obligation to purchase was reduced from two lots to one. Plaintiff's view of this transaction is that both lots 39 and 40 were returned to the defendants, and the defendants then "sold" her lot 39.[7] Defendants, on the other hand, argue that the event was not a new sale but a modification of the original sales contract.[8]

The parties agree that *if* a new "sale" occurred in March, 1974 plaintiff's § 1703 claim is timely. In our view, however, it is unnecessary to decide whether the transaction effected in March, 1974 was a new "sale," because, for reasons stated below, we believe the test to be whether plaintiff has alleged a "violation" of § 1703(a)(2) *occurring within two years of her filing this complaint in November, 1975.*[9]

For reasons set forth at length in the companion *Husted* opinion, filed today, if the defendants deceived plaintiff or misrepresented pertinent facts to her on which she relied when she entered into the formal renegotiation and redefinition of interests in March, 1974, a violation of § 1703 would have occurred. Section 1703 prohibits persons "in selling" lots, from obtaining money by means of false representations or from otherwise engaging in a scheme of deceit. Plaintiff formally recommitted herself to the purchase of one lot in Rio Rancho Estates in March, 1974. Defendants' activities in connection with this transaction were related to their efforts "in selling" lots "to obtain money." It cannot be said on the basis of the pleadings that no violation occurred on this occasion. Thus, defendants' argument that Bryan seeks to represent a class on a claim which she cannot herself pursue must be rejected.

## C. Conclusion

Discussion of the other requirements for class certification in Part I *supra* is equally applicable to the ¶ 11 claims. Accordingly, in addition to certifying a class on the § 1709(a) claims, it is appropriate conditionally to certify the class on the § 1703(a)(2) claims as well. The class is defined to include "those purchasers (from November 21, 1972 forward) who purchased property in an 'undeveloped area' [of Rio Rancho Estates] and who have not exchanged their property for a lot in a developed area (i. e.,

---

7. In support of this position, she notes that the defendants' computer recorded the event as a "cancellation and new purchase," and that she was provided a second copy of the federal property report for lot 39 on signing the "Property Exchange Amendment."

8. In support of their interpretation, they rely on the actual terms of the exchange amendment, which provides that except as expressly amended by the exchange amendment, all terms of the original contract remain in effect. No new six-month refund privilege ran from the date of the Property Exchange Amendment, and the five year exchange privilege continued to run from the date of the first contract. Defendants' interpretation of the exchange amendment's provision which provides for

voiding the agreement if a property report is not supplied is that if the exchange amendment were voided, plaintiff would be bound by the terms of the original contract and thus obligated to pay installments on two lots instead of one. Cf. note 7, *supra.*

9. As discussed in the *Husted* opinion, the three year umbrella limitations period applicable to all claims under the ILSFDA runs from the date of the "sale," whereas the two year period applicable to suits for violations of § 1703 [§ 1709(b)(1)] runs from the time of the "violation." Since Bryan filed her action within three years of the first purchase agreement, there is no need to decide whether the March, 1974 transaction was a "sale."

an area with water, electricity, sewerage and telephones).[10]

Submit order on notice.

---

10. The parties did not raise the question whether the class on the § 1703 claims should be limited to those who either purchased or engaged in substantial modifications of their commitments to purchase on or after November 21, 1973, in light of the *two*-year period of limitations on such claims. We therefore do not decide whether such a modification of class definition would be appropriate.