Mark TAPLETT, Plaintiff,

v.

TRG OASIS (TOWER TWO), LTD., L.P., a Florida Limited Partnership Defendants.

No. 08–cv–00541.

United States District Court, M.D. Florida, Fort Myers Division.

April 30, 2009.

James D. Ryan, Ryan & Ryan Attorneys, PA, North Palm Beach, FL, for Plaintiff.

Betsy Lu McCoy, Betsy L. McCoy, PA, Coral Gables, FL, Gary A. Woodfield, Haile, Shaw & Pfaffenberger, PA, North Palm Beach, FL, C. Cory Mauro, Edwards Angell Palmer & Dodge, LLP, West Palm Beach, FL, for Defendants.

### OPINION

RICHARD MILLS, District Judge:

Plaintiff Mark Taplett seeks damages and other relief against Defendant TRG Oasis based on the sale of a condominium.

TRG moves to dismiss parts of Count I of the Complaint, which asserts claims under the Interstate Land Sale Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701, *et seq.*

With respect to the issues raised in the filings, the motion is granted.

### I. BACKGROUND

#### A. Facts Alleged

The Complaint, which is accepted as true and accurate at this stage of the proceedings, alleges the following.

TRG, a Florida Limited Partnership with a principal place of business in Miami, develops and sells residential condominium properties in Florida. Taplett is a resident of Palm Beach County, Florida, who was interested in purchasing a condo in Fort Myers, Florida.

In April 2005, Taplett met with TRG's sales agent regarding a condo at "Oasis Tower Two." The sales agent allegedly told Taplett that the unit "would have good investment potential or would increase in value." At some point, Taplett also received a booklet and other printed materials regarding the property.

On May 5, 2005, Taplett reserved one of 240 condo units at TRG's "Oasis Tower Two" by depositing $47,690.00 into escrow.

Sometime after June 24, 2005, TRG presented Taplett with the property report (as described in 15 U.S.C. § 1707).

Taplett entered into a Purchase Agreement for the condo on July 15, 2005, and deposited an additional $20,000.00 into escrow. TRG executed the purchase agreement the next day.

Later in 2005, Taplett made a final deposit of $67,690.00, bringing the total in escrow up to $135,380.00.

In a letter dated June 20, 2008, Taplett demanded the refund of his deposit money. His letter asserted two grounds for the refund: (1) various ILSFDA violations and (2) a Florida statutory violation.

According to the Complaint, closing has not yet occurred on the condo unit nor has any escrow money been returned to Taplett.

#### B. District Court Proceedings

On July 9, 2008, Taplett filed a two-count Complaint [d/e 1]. Count I alleges

four violations of the ILSFDA: (1) a violation of § 1703(a) based on an unfair sales practice under 24 C.F.R. § 1715.20(h); (2) a violation of § 1703(a) based on the failure to provide an advertising disclaimer under 24 C.F.R. § 1715.50(a); (3) a violation of 15 U.S.C. § 1703(d)(1) based on the failure to provide a legal description of the property; and (4) the "failure to return even five percent (5%) of the purchase price upon demand," allegedly a violation of 15 U.S.C. § 1703(d). Count II, encompassed by supplemental jurisdiction, alleges a violation of Florida Statute § 720.401.

On September 30, 2008, TRG filed the present combined motion to dismiss and memorandum of law [d/e 20]. Although styled as a motion to dismiss the complaint, the motion only attacks two portions of Count I: the alleged unlawful sales practice and the failure to provide a legal description. As such, the Court confines itself to these issues and expresses no opinion regarding the remaining ILSFDA and state law claims.

Taplett filed a timely response [d/e 23]. That response also alleges additional violations arising under 15 U.S.C. § 1703(d)(2). However, since nothing in the Complaint put TRG on notice of these new claims, they will be disregarded.[1]

## II.  APPLICABLE STANDARDS

On a motion to dismiss, the complaint's allegations are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (citing *Hoffman–Pugh v. Ramsey,*

312 F.3d 1222, 1225 (11th Cir.2002)). "However, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). While federal courts generally require only notice pleading, Fed.R.Civ.P. 8(a)(2), there must still be "enough factual matter (taken as true) to suggest the required element." *Rivell,* 520 F.3d at 1309 (citations and internal quotations omitted). Mere labels, conclusions, and formulaic recitations of the elements are, as always, insufficient. *Bell Atlantic,* 550 U.S. at 555, 127 S.Ct. 1955; *Watts v. Fla. Int'l Univ.,* 495 F.3d 1289, 1295 (11th Cir.2007).

## III.  ANALYSIS

■  "ILSFDA is an anti-fraud statute utilizing disclosure as its primary tool...." *Winter v. Hollingsworth Props., Inc.,* 777 F.2d 1444 (11th Cir.1985). The bulk of these disclosures occur through two major documents: a "statement of record" and a "property report." *See, e.g.* 15 U.S.C. §§ 1703(a)(1), (c); 1704 through 1708. This case, however, touches on two other important aspects of the statute: ILSFDA's general anti-fraud provisions, 15 U.S.C. § 1703(a)(2), and its contractual language requirements, 15 U.S.C. § 1703(d).

### A.  Claims arising under § 1703(a)(2)

Taplett first claims that TRG violated the anti-fraud provisions of § 1703(a)(2).[2] That rule provides as follows:

---

1.  Should Taplett wish to pursue these claims, he should amend his Complaint.

2.  Taplett only references § 1703(a) generally. The question (and an important one, as illustrated below) is whether § 1703(a)(1) or (a)(2) was allegedly violated. Since the former subsection only addresses problems with state-

ments of record and property reports, the latter subsection must be the applicable one. *See also* 24 C.F.R. § 1715.10 (noting that Subpart B, under which the "good investment" disclosure requirements appear, is intended to address "unlawful" and "misleading" sales practices, i.e., fraud).

It shall be unlawful for any developer or agent ... (2) with respect to the sale or lease, or offer to sell or lease, any lot not exempt under § 1702(a) of this title—

(A) to employ any device, scheme, or artifice to defraud;

(B) to obtain money or property by means of any untrue statement of a material fact, or any omission to state a material fact necessary in order to make the statements made (in the light of the circumstances in which they were made and within the context of the overall offer and sale or lease) not misleading, with respect to any information pertinent to the lot or subdivision;

(C) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon a purchaser. . . .

15 U.S.C. § 1703(a)(2).

Taplett's theory is that § 1703(a)(2) was violated when TRG's agent committed a regulatory "unlawful sales practice": suggesting to Taplett that the condo would be a good investment without providing certain written disclosures. *See* 24 C.F.R. § 1715.20(h).

Unfortunately for Taplett, the Purchase Contract (which is attached to the Complaint) expressly disclaims any reliance on oral representations such as those purportedly made by the agent. As such, TRG asks this Court to dismiss the alleged § 1703(a)(2) violation.

Taplett responds that reliance is not required under § 1703(a)(2). He bases this assertion on a line of cases finding that reliance is not an element of claims arising under § 1703(a)(1), *Burns v. Duplin Land*

*Dev., Inc.,* 621 F.Supp.2d 292, 303–05 (E.D.N.C.2009) (§ 1703(a)(1)(C)); *Dongelewicz v. First E. Bank,* 80 F.Supp.2d 339, 348 (M.D.Pa.1999) (§ 1703(a)(1)); *Gibbes v. Rose Hill Plantation Dev. Co.,* 794 F.Supp. 1327, 1334 (D.S.C.1992) (§ 1703(a)(1)(C)), or its pre–1979 statutory predecessors, *Hester v. Hidden Valley Lakes, Inc.,* 495 F.Supp. 48, 53 (N.D.Miss. 1980) (§ 1709(b)(2)); *Bryan v. Amrep Corp.,* 429 F.Supp. 313, 317 (S.D.N.Y.1977) (§ 1709(a)); *Husted v. Amrep Corp.,* 429 F.Supp. 298, 310–11 (S.D.N.Y.1977) (§ 1709(a) and (b)(2)); *Rockefeller v. High Sky, Inc.,* 394 F.Supp. 303 (E.D.Penn.1975) (15 U.S.C. § 1703(a)(1) and (b)); *Hoffman v. Charnita, Inc.,* 58 F.R.D. 86, 90–91 (M.D.Pa.1973) (§ 1709(a) and (b)(2)).[3]

These cases reason as follows: Section 1703(a)(1) was modeled § 12(a)(2) of the Securities Act of 1933. *Flint Ridge Dev. Co. v. Scenic Rivers Ass'n of Okla.,* 426 U.S. 776, 96 S.Ct. 2430, 49 L.Ed.2d 205 (1976) (noting that ILSFDA "is based on the full disclosure provisions and philosophy of the Securities Act of 1933 . . ."); *Paquin v. Four Seasons of Tenn., Inc.,* 519 F.2d 1105, 1109 (5th Cir.1975). Section 12(a)(2) does not require reliance. *Currie v. Cayman Res. Corp.,* 835 F.2d 780, 782 (11th Cir.1988). *Ergo,* section 1703(a)(1) also does not require reliance. *Burns,* 621 F.Supp.2d at 304–05. On these points, all courts appear to be in agreement. *See id.* at 304 (noting that "courts have uniformly concluded that a purchaser need not rely on the property report to establish liability under § 1703(a)(1)(C) (and its statutory predecessors)").

The problem is that Taplett's claims do not arise under § 1703(a)(1), which deals

---

**3.** Sections 1709(a)(1) and (b)(2) of the pre–1979 statute, which prohibited the use of untrue statements in statement of record and property report, were the precursors of current § 1703(a)(1)(C). Similarly, former § 1703(a)(1) and (b), which forbade sales without statements of record or property reports, correspond to current § 1703(a)(1)(A) and (B).

only with property reports and statements of record. *See* 15 U.S.C. § 1703(a)(1). Rather, the violation allegedly stems from § 1703(a)(2) and its accompanying regulations. Whether that provision requires reliance is a more difficult question.

A determination of whether reliance must be shown begins with a review of the statute's plain language. *Jimenez v. Quarterman*, 555 U.S. 113, 129 S.Ct. 681, 685, 172 L.Ed.2d 475 (2009); *Nguyen v. United States*, 556 F.3d 1244, 1250 (11th Cir.2009). The analysis of § 1703(a)(2), however, does not begin on a clean slate. Rather, "in interpreting [ILSFDA], courts have applied the more comprehensively developed jurisprudence of securities cases." *U.S. Dep't of Housing & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 924 (4th Cir. 1995).

█ A review of subsection (a)(2) in light of securities law reveals that its progenitor is not § 12(a)(2), as in the case of subsection (a)(1); instead, the statutory language resembles Rule 10b–5, 17 C.F.R. 240.10b–5, as well as its close relative, § 17(a) of the Securities Act, 15 U.S.C. § 77q(a). *Gilbert v. Woods Mktg., Inc.*, 454 F.Supp. 745, 748–49 (D.Minn.1978) (noting the similarities and differences between Rule 10b–5 and the pre–1979 version of § 1703(a)(2)). Unlike § 12(a)(2), a private damages action under Rule 10b–5 generally requires a showing of reliance. *Basic Inc. v. Levinson*, 485 U.S. 224, 243, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The same is true for private actions under § 17(a), *Kramas v. Sec. Gas & Oil Inc.*, 672 F.2d 766, 769–70 (9th Cir.1982), where they are permitted, *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349 (9th Cir.1987)(finding no private cause of action under § 17(a)); *Landry v. All Am. Assurance Co.*, 688 F.2d 381, 384–91 (5th Cir.1982) (same). Given the similarities between these securities provisions and § 1703(a)(2), it would be inappropriate to interpret the ILSFDA provisions any differently.

Other courts are in accord. *Dongelewicz*, 80 F.Supp.2d at 349 (holding that subsection (a)(1) does not require reliance, but (a)(2) does); *Gilbert*, 454 F.Supp. at 748–49 (requiring reliance under subsection (a)(2) and following the presumption of reliance with respect to omissions)[4]; *Bryan*, 429 F.Supp. at 317, 319 (reliance not required under pre–1979 § 1709(a) claim but was required under § 1703(a)(2)(B)).[5] *See also Am. Savings Bank, F.S.B. v. UBS Paine-Webber, Inc.*, 250 F.Supp.2d 1254, 1259 (D.Haw.2003) (employing similar reasoning with respect to a state statute). *Cf. Gibbes*, 794 F.Supp. at 1336 (suggesting, without explanation, that reliance is not required for *either* misleading statements or omissions under § 1703(a)(2)(A) or (C), but requiring reliance for affirmative misrepresentations under § 1703(a)(2)(B)).

One court, in construing an analogous state law, has strongly suggested that § 1703(a)(2) does not require reliance. *Disandro v. Makahuena Corp.*, 588 F.Supp. 889, 895 (D.Haw.1984). This assertion was drawn from the legislative history of subsection (a)(2)(B). *Id.* The original 1968 version of § 1703(a)(2)(B)

---

4. *Gilbert's* analysis was slightly more nuanced, largely because § 1703(a)(2)(B), prior to the 1979 amendments, did not encompass claims for material omissions.

5. TRG also points to other cases where ILSFDA claims were thrown out because contractual provisions showed a lack of reliance.

Those cases, however, merely assumed that reliance was an element without actually exploring the issue. *See Garcia v. Santa Maria Resort, Inc.*, 528 F.Supp.2d 1283 (S.D.Fla. 2007); *Weaver v. Opera Tower, LLC*, 2008 WL 4145520, *2 n. 5 (S.D.Fla. Aug. 1, 2008).

generally paralleled the current statutory language but with two significant differences: no omission liability and an express reliance requirement. *See* 15 U.S.C. § 1703(a)(2) (1976). In 1979, the ILSFDA was amended "to conform more closely to the language found in securities laws." H. Rep. No. 96–154, at 34 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 2317, 2350–51. As such, omission liability was added and the phrase mandating reliance was deleted from § 1703(a)(2)(B). *See* Pub.L. No. 96–153, § 403, 93 Stat. 1101, 1127–28 (1979). *Cf.* 15 U.S.C. § 77q(a). According to the House Report and the House Conference Report, the deletion was made so that "the purchaser's actual reliance would no longer have to be an element of proof...." H. Rep. No. 96–154, at 34–35 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 2317, 2350–51; H.R. Conf. Rep. No. 96–706, at 83 (1979), *as reprinted in* 1979 U.S.C.C.A.N. 2402, 2442. Rather, reliance issues were to be subsumed into the general materiality inquiry. H. Rep. No. 96–154, at 34–35, *as reprinted in* 1979 U.S.C.C.A.N. at 2350–51; H.R. Conf. Rep. No. 96–706, at 83, *as reprinted in* 1979 U.S.C.C.A.N. at 2442.

While this legislative history does provide some support for Taplett's position, it is ultimately unconvincing. Despite the statements regarding reliance, the House Report also noted that the amendments were designed "to conform more closely to the language found in securities laws." To find that linguistic changes intended to more closely mimic Rule 10b–5 and § 17 actually created greater *differences* in interpretation would be anomalous. Therefore, despite the language in the House Report, section 1703(a)(2) should be interpreted in the same manner as Rule 10b–5 and § 17(a) of the Securities Act. *See 14 Penn Plaza LLC v. Pyett,* —— U.S. ——, 129 S.Ct. 1456, 1465 n. 6, 173 L.Ed.2d 398 (2009) (rejecting a House Report's interpretation that conflicted with the statutory text).[6]

In short, this Court construes § 1703(a)(2) in accordance with the securities laws it is modeled on and holds that reliance is a requirement, at least where the § 1703(a)(2) suit is brought by a purchaser under § 1709.[7]

One issue remains. Even though § 1703(a)(2) requires reliance, the Supreme Court has found that "positive proof of reliance" is still not required where "a duty to disclose material information has been breached...." *Basic Inc.,* 485 U.S. at 243, 108 S.Ct. 978 (citing *Affiliated Ute Citizens v. United States,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972)). In such cases, a rebuttable presumption of reliance arises. *Stoneridge*

---

**6.** A further complication is that reliance is not an element of criminal suits or civil enforcement actions brought by the SEC under Rule 10b–5 or § 17. *S.E.C. v. Rana Research, Inc.,* 8 F.3d 1358, 1363–64 (9th Cir.1993) (Rule 10b–5); *S.E.C. v. Wolfson,* 539 F.3d 1249, 1260 n. 17 (10th Cir.2008) (§ 17); *United States v. Ashdown,* 509 F.2d 793, 799 (5th Cir.1975). This suggests that reliance is a judicial gloss designed to restrict the scope of implied actions rather than an element derived from the statutory language. *See Rana Research, Inc.,* 8 F.3d at 1363–64. Nevertheless, regardless of the origins of the reliance element, this Court believes that private ac-

tions under Rule 10b–5 and § 17 provide the proper analogue for construing 15 U.S.C. § 1703(a)(2). Whether different rules apply for HUD enforcement actions, 15 U.S.C. § 1714, or criminal prosecutions, 15 U.S.C. § 1717, is another matter.

**7.** Even if this Court had found that reliance need not be shown, Taplett may have been limited to nominal damages and costs. *See Johnson v. Stephens Dev. Corp.,* 538 F.2d 664, 666 (5th Cir.1976) (nominal damages and costs where ILSFDA was violated but no actual monetary loss ensued).

*Inv. Partners, LLC v. Scientific–Atlanta,* 552 U.S. 148, 128 S.Ct. 761, 769, 169 L.Ed.2d 627 (2008). Thus, even when § 1703(a)(2)(B) expressly required reliance (and did not expressly protect against material omissions), courts permitted omission claims to go forward under § 1703(a)(2) without a showing of reliance. *See Bryan,* 429 F.Supp. at 320 (citing *Affiliated Ute* and noting, in the class certification context, that "to the extent that plaintiff proves violations of § 1703(a)(2)(A), (C) by evidence of a complete omission of a material fact, proof of reliance is not required ...").

The regulation invoked in this case explicitly requires the disclosure of written materials following an oral assertion regarding the investment potential of a lot. 24 C.F.R. 1715.20(h). According to the complaint, none of this information was disclosed. Thus, a material omission existed and reliance should be presumed.

At the dismissal stage, this normally ends the analysis. Nevertheless, the presumption may be rebutted where the complaint (and attached documents) show that the presumption has been definitively rebutted. Thus, where provisions of a Purchase Agreement expressly disclaim reliance on prior oral representations, courts have found no reasonable reliance as a matter of law. *Weaver v. Opera Tower, LLC,* 2008 WL 4145520, *2 (S.D.Fla. Aug. 1, 2008); *Garcia v. Santa Maria Resort, Inc.,* 528 F.Supp.2d 1283, 1295 (S.D.Fla. 2007).

■ Here, the Purchase Contract contains a merger clause and admonishes the purchaser, in all capitals, that "oral representations cannot be relied upon...." The final paragraph of the Purchase Contract also explains that "[a]ny current or prior ... oral statements of sales representatives or others ... are void and have no effect." Most importantly, however, the Purchase Contract provides that

> Buyer acknowledges, warrants, represents and agrees that this Agreement is being entered into by Buyer without reliance upon any representations concerning any potential for future profit, any future appreciation in value, any rental income potential, tax advantages, depreciation or investment potential and without reliance upon any monetary or financial advantage.

Complaint, Ex. A, ¶ 36.

Based on these provisions, the presumption of reliance has been definitively rebutted.[8] *Weaver,* 2008 WL 4145520, at *2; *Garcia,* 528 F.Supp.2d at 1295. As such, dismissal of the § 1703(a)(2) claim is proper.

To summarize: (1) the § 1703(a)(2) violation premised on non-compliance with 24 C.F.R. § 1715.20(h) requires a showing of reliance, (2) reliance is presumed where a claim is premised on a material omission, and (3) the Purchase Contract rebuts the presumption as a matter of law.

#### B.  Claims arising under § 1703(d)(1)

##### 1.  Timeliness

Taplett also seeks to recover for an alleged violation of § 1703(d)(1). TRG re-

---

**8.** Although not discussed by the parties, this portion of the Purchase Agreement also provided that "Buyer should initial where indicated to evidence its agreement...." *Id.* The blanks next to the disclaimer provision, however, do not appear to have been initialed by Taplett. Nevertheless, since the contract as a whole was signed and since multiple other provisions disclaim any reliance on prior oral representations, this lack of initialing is not problematic. *See, e.g., Elsken v. Network Multi–Family Sec. Corp.,* 49 F.3d 1470, 1473–74 (10th Cir.1995).

sponds that any § 1703(d) violations are time barred.[9]

Section 1703(d)(1) allows a purchaser to rescind a non-exempt agreement that fails to provide, inter alia, "a description of the lot ... which is in a form acceptable for recording ...." The rescission right, however, is lost if no attempt at exercising the right is made within two years of the signing of the agreement. § 1703(d); *Taylor v. Holiday Isle, L.L.C.*, 561 F.Supp.2d 1269, 1271–74 (S.D.Ala.2008). Here, the rescission demand was not made until June 20, 2008, well after the two-year window closed. Thus, rescission is no longer available.[10]

However, the Complaint does not seek rescission; rather, Taplett wants damages. Section 1709(b) expressly permits damages suits for violations of § 1703(d). 15 U.S.C. § 1709(b). Courts have noted that even where the rescission remedy is time-barred, this damages remedy may still be pursued. *Ditthardt v. N. Ocean Condos, L.P.*, 580 F.Supp.2d 1288, 1292 (S.D.Fla. 2008); *Taylor*, 561 F.Supp.2d at 1276; *see also Bush v. Bahia Sun Assocs., Ltd. P'ship*, 2009 WL 963133, *13 (M.D.Fla. Apr. 8, 2009). Of course, the damages remedy of § 1709(b) is also subject to a limitations period, but it stretches out for three years. 15 U.S.C. § 1711(b). Since the damages suit was filed within three years of the Purchase Contract, dismissal on timeliness grounds would be improper.

### 2. Violation

The remaining question is whether Taplett has stated a claim for a violation of § 1703(d)(1). As discussed above, all non-exempt sales contracts and agreements must provide "a description of the lot which makes such lot clearly identifiable and which is in a form acceptable for recording by the appropriate public official responsible for maintaining land records in the jurisdiction in which the lot is located...." 15 U.S.C. § 1703(d). The question here is whether the Purchase Contract's description was "in a form acceptable for recording" in Florida.

Under Florida law, condominiums are created by filing a declaration. Fla. Stat. § 718.104(2). Such declarations contain numerous disclosures, including a legal description of the land, identifications of individual units, and surveys of the land. § 718.104(4).

Once this declaration has been filed, parties may then move on to a second step: filing "a description of the condominium parcel by the number or other designation by which the unit is identified in the declaration, together with the recording data identifying the declaration...." 718.109. Such a filing "shall be a sufficient legal description for all purposes." *Id.*

Despite these requirements, condominiums may be sold prior to the filing of a declaration, § 718.504(24)(a), so long as the developer prepares and files a prospectus or offering circular and offers it to each buyer prior to entering into a purchase contract, § 718.504. Like the declaration, the prospectus also requires numerous disclosures, including a copy of "[t]he declaration of condominium, or the proposed declaration if the declaration has not been recorded." § 718.504(24)(a).

---

**9.** TRG also argues for the dismissal of a § 1703(c) claim. Taplett, however, admits that he has not alleged any violation of subsection (c).

**10.** Taplett filed a notice of supplemental authority that highlighted *Jankus v. Edge Investors, L.P.*, 619 F.Supp.2d 1328 (S.D.Fla.2009).

That case dealt with the narrow issue of whether the two year limitation on the rescission remedy should be extended where a developer fails to provide contractual notice of the rescission remedy. *Id.* at 1335–38. Since such contractual notice was provided in this case, *Jankus* is inapposite.

Relying on this latter provision, TRG did not immediately file a Declaration of Condominium, but instead prepared a Prospectus containing a proposed Declaration. The Purchase Contract acknowledged that these documents had been created and exchanged. Beyond this, the Purchase Contract provided the following description: the designation of the condo unit and the name of the development project.

Taplett argues that this method of providing a legal description failed to comply with § 1703(d)(1)'s "recordable form" requirement because the Purchase Contract lacked the "recording data identifying [the] declaration" mandated by § 718.109. Taplett admits that such data was unavailable since TRG had not filed the proposed Declaration, but he argues that TRG could have remedied this problem by filing the declaration earlier, as allowed under § 718.104.

While Taplett is correct that this alternative procedure could have been employed, section 1703(d) does not demand so much. While the contract did fail to reference the declaration's "recording data", TRG actually gave more: the proposed declaration itself along with a contractual obligation to file it prior to closing. To penalize a developer for giving the entire document rather than a mere identifying reference (required so that the same document could be found) would be absurd.

In any event, ILSFDA is not aimed at ensuring technical compliance with state recording statutes. Rather, its focus is preventing fraud through the disclosure of pertinent information. Under Florida's statutory scheme, it is the Declaration, not the later condominium parcel filing, that contains the relevant disclosures and descriptions of property. Given TRG's disclosure of the proposed Declaration (which included a property description and other information) and its compliance with Florida's statutory framework, this Court finds no violation of § 1703(d)(1). The claim is dismissed.[11]

## IV. CONCLUSION

*Ergo*, the Court hereby GRANTS TRG's motion to dismiss the alleged § 1703(a)(2) violation premised on 24 C.F.R. § 1715.20(h). The motion to dismiss the § 1703(d)(1) claim is also GRANTED.[12]

IT IS SO ORDERED.

---

11. Again, even if this Court were to hold otherwise, it seems unlikely that Taplett could recover more than nominal damages.

12. The Court expresses no opinion regarding the three remaining claims: the second regulation violation under § 1703(a)(2), the purported "5% refund" violation of § 1703(d), and the Florida statutory claims. The Court also expresses no opinion regarding any purported violations of § 1703(d)(2), which were not referenced or otherwise suggested in the Complaint.